## MACKEY *v.* BAKER.

1. TRUSTS—CONSTRUCTIVE TRUSTS—PURCHASE OF PROPERTY BY BROKER.

> Finding of trial court in suit to establish a constructive trust as to title to real estate that defendant real-estate broker's agreement to act as plaintiffs' agent with respect to securing a long-term lease of property involved and as to parcels on either side thereof was in effect for over 3 years before defendant purchased property in dispute for himself and his wife and for some 3 months thereafter *held,* supported by record.

2. BROKERS—PURCHASE OF PROPERTY—BREACH OF AGENCY RELATION.

> Real-estate broker who purchased property for himself and wife violated his duties as agent of plaintiffs where he became their agent for purchase thereof over 3 years theretofore.

3. SAME—FIDUCIARY RELATION AS AGENT.

> A real-estate agent is a fiduciary and it is not permissible for him to act in opposition to his principal.

4. TRUSTS—PRINCIPAL AND AGENT—CONSTRUCTIVE TRUSTS.

> An agent undertaking any business or the performance of any services for another is disabled in equity from dealing with the subject matter of the agency upon his own account or for his own benefit, and if he does attempt so to deal in his own name he will be deemed a constructive trustee for his principal.

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 4]  8 Am Jur, Brokers, § 103; 54 Am Jur, Trusts, §§ 237, 238.
[1, 4]  Rights of parties under oral agreement to buy land or bid it in at judicial sale for another. 42 ALR 10; 135 ALR 232.
[2–4]  8 Am Jur, Brokers, § 88.
[3, 4]  8 Am Jur, Brokers, §§ 85, 86.
[5]  8 Am Jur, Brokers, §§ 142, 196–198.
[6]  54 Am Jur, Trusts, §§ 618, 620, 621.
[6]  Degree or intensity of parol proof necessary to establish a trust. 23 ALR 1500.

5. Brokers—Violation of Trust—Commission—Reimbursement for Purchase.

   Real-estate broker who purchased property for himself and wife, which plaintiffs were endeavoring to procure through him would not be entitled to commission but only reimbursement for the purchase price paid, since he violated his agency agreement.

6. Trusts—Constructive Trusts—Evidence.

   A constructive trust need be established only by a preponderance of proof.

Appeal from Ingham; Coash (Louis E.), J. Submitted February 4, 1950. (Docket No. 15, Calendar No. 44,603.) Decided February 28, 1950. Rehearing denied April 3, 1950.

Bill by Edwin A. Mackey and Walter M. Bunnell and their wives against Gerald A. Baker and wife to establish a constructive trust as to real estate. Decree for plaintiffs. Defendants appeal. Affirmed.

*Pierce, Planck & Ramsey,* for plaintiffs.

*Kelley, Sessions & Kelley,* for defendants.

Reid, J. Plaintiffs filed their bill to establish a constructive trust as to title to real estate. From a decree determining that defendants acquired and hold the real estate as constructive trustees and requiring defendants to make conveyance to plaintiffs, defendants appeal.

Plaintiffs claim and defendants deny that defendant Gerald A. Baker violated his obligation as a real-estate agent by purchasing the piece of real estate in question in the name and for the use and benefit of himself and wife (the other defendant), which piece of real estate plaintiffs had engaged said Gerald A. Baker to purchase for plaintiffs.

Plaintiffs Edwin A. Mackey and Cecille R. Mackey are husband and wife. Plaintiff Charlotte J.

Bunnell is the wife of plaintiff Walter M. Bunnell, and defendant Rachel V. Baker is the wife of defendant Gerald A. Baker. We will refer to the respective husbands as plaintiffs and defendant because the husbands were, and the wives were not, shown to have actively taken part in the dealings between the parties.

About June 1, 1933, plaintiffs began operating a gasoline filling station and parking lot at the northeast corner of south Capitol avenue and west Washtenaw street in Lansing under the name of Lansing Crown Service, Inc., the entire property so used being lots 7 and 8 of block 115 of the original plat of Lansing. Lots 7 and 8 have a total frontage of 132 feet on south Capitol avenue and 165 feet on west Washtenaw street. Lot 7 has 66 feet frontage on south Capitol avenue and 165 on west Washtenaw to an alley. Lot 8 has 66 feet frontage on south Capitol avenue and extends to the width of 66 feet between lot 7 and Masonic Temple property, 165 feet to the alley. Plaintiffs own and control all of lots 7 and 8 except the south one-half of lot 8, known as Mrs. Johnson's parcel, which separates plaintiffs' holdings and which is the subject matter of this litigation.

Before 1933 lots 7 and 8 had been divided in ownership into 5 parcels. Before beginning operations in June, 1933, plaintiffs obtained leases on all 5 parcels partly through a real estate agent, a Mr. Ludwig, and partly through defendant Baker. Mr. Ludwig did not act as broker for plaintiffs thereafter. However, in the negotiations for the leases, defendant Baker also acted as the agent for Mrs. Johnson, owner of the parcel in question, as to her parcel.

Defendant Baker in 1940 acted as the agent of plaintiffs in securing a loan of $38,000 to complete the purchase from Collateral Liquidation Corpora-

tion of the west 99 feet of lot 7, the corner tract, 66 feet on south Capitol avenue with 99 feet on west Washtenaw street.

Plaintiff Bunnell testified that plaintiffs first disclosed to defendant Baker the plan of plaintiffs to acquire title to both of the entire lots 7 and 8 about the time that plaintiffs purchased the Collateral Liquidation Corporation parcel around 1939 or 1940; that it was discussed the first time at a lunch at the Masonic Temple one noon and that among other things, "Mr. Baker [defendant] told us at that time, as he had other times after that time, that Mrs. Johnson had told him that if she did sell it that we would get first chance to purchase it [the Johnson property]."

Plaintiff Mackey testified that about June, 1940, plaintiffs conferred many times with defendant Baker about plaintiffs' plan to acquire title to all of lots 7 and 8, and that defendant Baker "told us he would work with us  *  *  *  he submitted this property as an entirety to several firms who were interested."

Plaintiffs purchased the Bishop property (the 40-foot strip across lot 7 immediately east of Collateral Liquidation Corporation) on land contract, December 1, 1939. In the Bishop purchase, defendant Baker did not act as agent for plaintiffs, because Mrs. Bishop preferred to deal directly with plaintiff Mackey.

In the acquisition by plaintiffs of the Muir property (which is the easterly 26 feet of lot 7) in 1944, defendant Baker did act as agent for plaintiffs. Plaintiffs by oral arrangements with defendant Baker (a gentlemen's agreement, without written agreement for commission) got Baker to contact Muir relative to the purchase. Mr. Baker succeeded in getting from Muir a commitment to accept $15,-000, to which plaintiffs subsequently agreed. Baker

was paid by plaintiffs $750 as his commission, which was agreed on.

About or before December, 1944, plaintiff Mackey asked defendant Baker to procure an extension of Mrs. Johnson's lease for 5 years. The lease was discussed by correspondence or otherwise with Mrs. Johnson. Also plaintiffs had requested Baker to procure from Mrs. Johnson a commitment for sale of Mrs. Johnson's parcel.

There is in evidence a letter dated December 26, 1944, from Mrs. Johnson to defendant Baker which in part is as follows:

"I am returning two of the leases and the other I shall keep here. You may tell Mr. Mackey that so far as I know now he will have the first option on the property five years from now. I will not go back on my word to you. When I get ready to sell you will have the first chance."

There is an inference from this letter that Mrs. Johnson had assured defendant Baker as agent for plaintiff Mackey that Mackey would have the first chance to buy the property, the subject matter of this litigation, and also that Mrs. Johnson consented that Mr. Baker, who was her agent respecting renting her parcel, should act as agent for plaintiff Mackey as to purchase of her parcel.

In February, 1945, plaintiffs were considering a plan, sometimes referred to as a long-lease plan, whereby all of lots 7 and 8 would be offered to be leased to a large firm that would be expected to pay $12,000 a year rent, to be apportioned among the owners of the various parcels comprising the two lots, 7 and 8. Defendant Baker testified that plaintiff Mackey asked him to come to plaintiffs' office and Mackey unfolded to him there the long-lease plan (which would include the Johnson parcel) and "asked my consideration *as a leasing agent* to work out

some program on it. I had at that time different people in mind that could use the corner. The terms of that offer were discussed, and I came back to the office, [and] prepared the agreement." (Italics supplied.)

In the discussion, defendant Baker said the Johnson-tract owner should be paid one-fourth of the $12,000 annual rent or $250 per month, upon which the amount of rental was deleted from the proposed draft. The agreement between plaintiffs as principals and defendant Baker as agent was signed by plaintiffs and the matter was left in the hands of defendant Baker as agent to procure Mrs. Johnson's consent to the proposition to lease of her parcel along with plaintiffs' lands. Efforts and conversations between plaintiffs and defendant to effectuate that plan continued during the rest of Mrs. Johnson's lifetime. It is clear that defendant Baker was continuing to act as agent for plaintiffs to obtain Mrs. Johnson's consent to the long-term leasing plan. The renewal of Mrs. Johnson's short-term lease was further discussed by plaintiffs with defendant. Later a separate short-term lease of Mrs. Johnson's parcel was prepared and forwarded to Mrs. Johnson for her signature. In the discussion over such extension, plaintiffs took up with defendant Baker a proposed purchase by plaintiffs of the tract in question. A letter written by defendant Baker, March 20, 1945, to Mrs. Johnson, was in part as follows:

"Mr. Edwin A. Mackey and Walter M. Bunnell, who now occupy your south Capitol avenue lot, using same as a parking lot, have asked me to outline a proposal under which terms they may secure title to this property. They first offer to purchase same outright at a total consideration of $25,000 cash.

"Their second offer, in the event the above is not acceptable, would be to enter into a ground lease extending beyond the expiration of their five-year

term for any term of years agreeable to you, with an option in case of your death to purchase within 60 days thereof at a definite set price to be agreed upon at this date.

"If neither of these proposals can be worked out, they would then like to know the basis on which you, the owner, would be interested in dealing with them."

Mrs. Johnson replied to the letter on March 23, 1945, as follows:

"In answer to yours of March 20th, the property referred to is not for sale at this time.

"As to an extension of the lease, I feel that the present lease, which still has nearly five years before it expires, is sufficient for the time."

On November 7, 1945, plaintiffs had obtained deeds from Michigan Trust Company of the north one-half of lot 8 without defendant acting for them as agent but plaintiffs already had that parcel under land contract dated May 15, 1936, and so far as the case at bar is concerned, there is little significance in the fact that defendant did not act in that matter as agent for plaintiffs who seem not to have required any agent to help them get the title when they already had a land contract for the parcel thus involved.

Mrs. Johnson died August 26, 1947. Plaintiff Mackey testified that soon after Mrs. Johnson's death he requested defendant Baker to renew his activity to obtain for plaintiffs the purchase of the Johnson parcel and that defendant Baker reported that the nieces, devisees in Mrs. Johnson's will, so far had not indicated what they would do.

Plaintiff Bunnell testified that while on a train returning from Chicago on February 27, 1948, he told defendant Baker that plaintiffs were of course still interested in buying the Johnson parcel and that defendant Baker told him (plaintiff Bunnell) that

he believed the nieces would carry out Mrs. John-son's wishes and that he didn't "know what  *   *   * you boys [plaintiffs] are worrying so much about it for because when the time comes  *   *   * we'll have first chance on it."

Proceedings were instituted in probate court for Ingham county, early in 1948, for ancillary administration of Mrs. Johnson's estate and without informing plaintiffs of that fact, defendant Baker obtained a deed of Mrs. Johnson's lands in question to himself and wife Rachel V. Baker, the other defendant, from the ancillary administrator for $31,000, the sale being reported to probate court and immediate confirmation was had, the probate order reciting, "that unless said sale is immediately confirmed the estate will suffer serious financial loss." Defendant's deed is dated June 18, 1948.

Some time in the third week of July, 1948, plaintiffs met defendant Baker in front of the Bauch building in Lansing and asked him what could be done about the Johnson property, upon which defendant informed them that he had bought it for himself and wife. The testimony of all 3 parties, Mackey, Bunnell and Baker, discloses that plaintiffs exhibited surprise and consternation and, on the part of plaintiff Mackey particularly, anger at the purchase by Baker. Both plaintiff Mackey and plaintiff Bunnell testified that Baker had not told them prior to his obtaining the deed that he contemplated buying the property for himself.

Defendant Baker claims in his testimony that he did not assume to act for plaintiffs in the purchase of the Johnson parcel, and that Mrs. Johnson had given him, Baker, assurance that he could buy the property for himself as a reward for acting faithfully for her in handling her real estate in Lansing.

The trial court found that the engagement in February, 1945, of defendant Baker as agent of plain-

tiffs to secure a long-term lease of all the property (lots 7 and 8) was in effect until September 22, 1948, more than 2 months after defendant Baker received the deed to the premises in dispute. With such conclusion we are in accord.

It is further clearly proven and we therefore find that defendant Baker became the agent of plaintiffs in 1945 for their purchase of the Johnson parcel and that such agency continued until plaintiffs discovered, July, 1948, that Baker had violated his duties as agent by purchasing the property for himself and wife.

A real-estate agent is a fiduciary and it is not permissible for him to act in opposition to his principal. In this case defendant Baker, while agent for plaintiffs, obtained confidential knowledge of the financial and property situation, desires, plans and needs of his clients, the plaintiffs, and to some extent of his clients' ability and willingness to pay for Mrs. Johnson's parcel, and after he had obtained knowledge of the ancillary proceedings in probate court to sell the parcel, concealed that knowledge from his clients until he had obtained the title to himself and wife, in violation of his trust.

Plaintiffs cite and rely on *Stephenson* v. *Golden,* 279 Mich 493; *Stephenson* v. *Golden* (on rehearing), 279 Mich 710; *Evanoff* v. *Hall,* 310 Mich 487; *Trippensee* v. *Rice,* 312 Mich 233.

"An agent undertaking any business or the performance of any services for another is disabled in equity from dealing with the subject-matter of the agency upon his own account or for his own benefit, and if he does attempt so to deal in his own name he will be deemed a constructive trustee for his principal." *Stephenson Case, supra* (on rehearing), 279 Mich 710, 714 (syllabus 36).

Defendant Baker is not entitled to commission but only to be reimbused for the purchase price paid.

*Stephenson Case, supra* (on rehearing), 279 Mich 710, 770.

In the instant case, plaintiffs' showing is very clear but only a preponderance of proof is required of plaintiffs. *Stephenson Case, supra* (on rehearing), 279 Mich 710, 711 (syllabus 13).

The decree appealed from is affirmed, with costs to plaintiffs.

BOYLES, C. J., and NORTH, DETHMERS, BUTZEL, CARR, BUSHNELL, and SHARPE, JJ., concurred.