# STATE OF MICHIGAN

# COURT OF APPEALS

JANNDORHAS ENTERPRISES, LLC and
JESSIE LOWELL,

       Plaintiffs-Appellants,

v

WALKER INSURANCE AGENCY, INC,

       Defendant-Appellee,

and

SUE RUSSO,

       Defendant.

UNPUBLISHED
April 16, 2015

No. 320010
Ogemaw Circuit Court
LC No. 12-658480-CZ

Before: O'CONNELL, P.J., and FORT HOOD and GADOLA, JJ.

PER CURIAM.

This case involves an insurance coverage dispute that arose after plaintiffs' business burned down in 2011. Plaintiffs, Janndorhas Enterprises, LLC (Janndorhas) and Jessie Lowell, appeal as of right from an order of the trial court granting summary disposition in favor of defendant, Walker Insurance Agency, Inc. (Walker) pursuant to MCR 2.116(C)(10) (no genuine issue of material fact).[1] We affirm.

## I. FACTUAL BACKGROUND

In 2006, Lowell started Janndorhas and purchased a combination bowling alley and restaurant in Prescott, Michigan. Lowell initially secured commercial insurance for the building and its contents through the Diebold Insurance Agency (Diebold). The declarations page of the 2007 Diebold insurance policy indicated that plaintiffs obtained replacement cost coverage for the business with policy limits of $643,000 for the building and $108,000 for personal property.

---

[1] Plaintiffs' claims against defendant Sue Russo, an employee of Walker, were dismissed by stipulation below.

-1-

In 2008, Lowell entered a lease-to-buy agreement for the business with Vicky Barnes. After executing the agreement, Lowell moved to California with her husband. Barnes testified that there was no insurance on the business when she entered the agreement with Lowell. Barnes said that she contacted Diebold about acquiring insurance, but they refused to renew the old insurance policy. In 2008, Barnes sought to secure a commercial insurance policy through Walker and its employee, Sue Russo.

Russo testified when she first met with Barnes, Barnes brought the declarations page from the 2007 Diebold insurance policy and requested the same level of coverage. On May 30, 2008, Russo prepared a 2008 Acord Application, which she said requested building and property replacement cost insurance coverage in the amounts of $643,000 and $108,000 respectively.[2] On October 14, 2008, North Pointe Insurance Company (North Pointe) issued a commercial insurance policy for the business. Russo stated that the policy limits on the building and personal property under the 2008 policy were the same as under the 2007 Diebold insurance policy, but that the 2008 policy listed the coverage provided for the building as actual cash value (ACV) and not replacement cost. Russo could not recall why the policy listed ACV rather than replacement cost coverage, and could not remember whether she informed plaintiffs of this fact.

Lowell's recollection of the transition from Diebold to Walker is different. Lowell testified that while she was in California, she started receiving phone calls from the bank, her father, customers, and the State of Michigan, stating that things were not being paid at the business. As a result, several months after she left, Lowell returned to Michigan to assume control of the business because Barnes defaulted on the lease agreement. Lowell testified that she could not remember why she stopped insuring her business through Diebold, but stated that she was referred to Walker and met with Russo at some point at the bowling alley. Lowell testified that, at the meeting, she told Russo she wanted an insurance policy that provided "full coverage" so "[t]hat if anything ever happened, it would be replaced."

According to Lowell, Russo contacted her after the meeting and "told [her] that the insurance policy was in effect and that documents would be mailed to [her]." Lowell said that she received and reviewed the 2008 insurance policy when it came, but that she "didn't understand a lot of it." Lowell testified that no one from Walker ever contacted her about renewing the insurance policy, but she received updated insurance policies for 2009, 2010, and 2011. Lowell could not recall any other specific conversations with Russo about insurance, except for one conversation about a broken refrigerator or freezer.

Although Lowell stated that she did not remember speaking with anyone from Walker to renew her insurance policy each year, Walker submitted an October 2009 memo from Russo to Lowell that included a quote for a renewal of the 2008 insurance policy. The quote stated that plaintiffs' building would be insured at ACV for $643,000 and personal property would be

---

[2] Russo testified that an acord application is a document between an insurance agency and the insured that is used to define what coverages are being applied for. She explained that, once completed, the acord application is sent to an insurance company that will then create a proposal and policy based on the information in the application.

insured at replacement cost for $108,000. Subsequently, North Pointe renewed the insurance policy for 2009. The cover letter to the renewal advised plaintiffs to "carefully review your policy to be sure that coverages, limits and deductibles are correct, adequate and as desired."

Russo testified that both she and Lowell signed a 2010 Acord Application seeking the same coverage as the 2008 Acord Application, i.e., replacement cost coverage for the building and personal property with policy limits of $643,000 and $108,000 respectively. Russo testified that although the 2010 Acord Application sought "replacement cost coverage," the insurance policy issued for the period of October 14, 2010, through October 14, 2011, covered the building at ACV with policy limits of $643,000 for the building and $108,000 for personal property. Russo said that when the policy came back, the following interaction with Lowell occurred:

> I sat down and met with [Lowell] and delivered the policy [and] I went over the fact that the building was not replacement cost and that the contents were replacement cost. And I believe it was in 2010 she asked me if she could get replacement cost. And I said yes you could but you would have to increase coverage. She asked what was the replacement cost, I said I can't tell you but you have bowlers in your league that are contractors, I said ask one of them, you know, you're friends with them ask one of them to give you a rough idea of what it would cost to replace this building. I said and then once you have that figure let me know and I will get you a quote for replacement cost.

Russo specifically recalled telling Lowell to get an estimate from a contractor, but stated that Lowell never provided an estimate. Lowell testified that she did not recall a conversation with Russo where they talked about the insurance policy limits and whether the policy provided sufficient coverage. Lowell also testified that she never discussed with Russo how the insurance policy would work in the event of a loss or what insurance options were available.

On October 5, 2011, plaintiffs' business burned down. Lowell testified that she received two quotes to rebuild the building, and both quotes indicated that the cost to rebuild would be around $2,000,000. Lowell claimed that the personal property replacement costs also exceeded the policy limits. Lowell said that she called Walker and told them about the fire, and Russo directed her to call North Pointe. North Pointe ultimately paid the full policy limits for the building and personal property.

On May 9, 2012, plaintiffs filed a two-count complaint against Walker and Russo. In count one, plaintiffs alleged that Walker and Russo breached their contractual duty to provide plaintiffs with appropriate insurance coverage for the business. Plaintiffs specifically asserted that Walker and Russo breached their contractual duty to "properly advise Plaintiffs regarding the types and amount of commercial insurance that should be purchased" and to "properly advise Plaintiffs on how the insurance policy would respond in the event of a loss." In count two, plaintiffs alleged that they had a special relationship with Walker and Russo, and that Walker and Russo breached their duty to provide adequate commercial insurance.

On October 31, 2013, Walker filed a motion for summary disposition, asserting that plaintiffs could not establish the elements of their breach of contract or negligence claims. Walker asserted that plaintiffs did not have a *Harts*[3] "special relationship" with Walker, and that, because Walker was an independent insurance agent, the special relationship duties did not apply. Following oral arguments, the trial court ruled as follows:

[W]hen you take everything together look at . . . all the portions of the deposition that I've had access to, you look at the letters, the cover letter that says,

"Please review your policy to insure that the coverages, limits and deductibles are correct, adequate and as desired."

That places the burden back on you know that contravenes and contradicts your position on behalf of the Plaintiff and places the burden back on her to say, hey wait a minute 643 isn't enough; and I don't find . . . where the special relationship existed that's necessary to find that the Defendants' are responsible for anything other than the insurance amount. . . . I'm granting [Walker's motion].

## II. ANALYSIS

We review de novo a trial court's decision on a motion for summary disposition. *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). In reviewing a motion for summary disposition under MCR 2.116(C)(10), courts consider the "affidavits, pleadings, depositions, admissions, and other documentary evidence submitted by the parties in the light most favorable to the party opposing the motion." *Greene v A P Prods, Ltd*, 475 Mich 502, 507; 717 NW2d 855 (2006). A motion for summary disposition "tests the factual support for a claim and should be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *MEEMIC Ins Co v DTE Energy Co*, 292 Mich App 278, 280; 807 NW2d 407 (2011). A genuine issue of material fact exists if the record, viewed in a light most favorable to the nonmoving party, establishes a matter over which reasonable minds could differ. *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008). Further, the court reviewing the motion may not make factual findings on disputed factual issues during a motion for summary disposition and may not make credibility determinations. *Burkhardt v Bailey*, 260 Mich App 636, 647; 680 NW2d 453 (2004).

## A. BREACH OF CONTRACT

Plaintiffs first argue that the trial court erred in granting Walker's motion for summary disposition on their breach of contract claim. We disagree.

It is well established under Michigan law that a court is not bound by the label a party assigns to its claims. *Buhalis v Trinity Continuing Care Servs*, 296 Mich App 685, 691; 822 NW2d 254 (2012). Rather, courts must consider "the gravamen" of the suit based on a reading

---

[3] *Harts v Farmers Ins Exch*, 461 Mich 1; 597 NW2d 47 (1999).

of the complaint as a whole. *Id*. at 691-692. Although the Michigan Supreme Court has described "the relationship between the insurer and insured" as "a contractual one," it has not found a breach of contract for negligent advice and procurement of insurance by an insurance agent. *Harts v Farmer Ins Exch*, 461 Mich 1, 7; 597 NW2d 47 (1999). Rather, this Court has characterized an insurance agent's failure to procure requested insurance as a tort. *Holton v A+ Ins Assoc*, 255 Mich App 318, 324-325; 661 NW2d 248 (2003).

Plaintiffs point to the 2010 Acord Application as proof that Walker entered a contract to procure adequate replacement cost coverage insurance for their building and personal property. Plaintiffs assert that Lowell's testimony shows that she asked for a replacement policy with full coverage and that Russo agreed to procure it. Plaintiffs also claim that the 2010 Acord Application is documentation of the parties' agreement. However, the 2010 Acord Application does not include any language indicating that Walker agreed to procure adequate coverage for plaintiffs. Instead, the 2010 Acord Application is an application for renewal of commercial insurance. The document simply states that plaintiffs wished to renew their policy, that the building and personal property should be valued using replacement cost, and that the policy limits were expected to be $643,000 for the building and $108,000 for personal property. The document does not state that Walker agreed to advise plaintiffs about what coverage was needed to fully insure the property at replacement value in the event of a loss.

Further, assuming that the 2010 Acord Application was a contract, it was a conditional contract to apply for insurance in the amount and type listed on the application. See *Ten Broek v Jansma*, 161 Mich 597, 600; 126 NW 710 (1910) (holding that if an application for a life insurance policy was a contract it was "a conditional contract to insure" that would not constitute a contract of insurance). Again, nothing in the application obligated Walker to advise plaintiffs about the sufficiency of the coverage limits plaintiffs sought. Accordingly, the trial court did not err in dismissing plaintiffs' breach of contract claim.

## B. NEGLIGENCE

Plaintiffs next argue that they should prevail under a theory of negligence because Walker, as their insurance agent, owed them a duty to ensure that they received an adequate amount of coverage to meet their needs. We disagree.

"A negligence claim requires that a plaintiff prove the following four elements: (1) a duty owed to the plaintiff by the defendant, (2) a breach of that duty, (3) causation, and (4) damages." *Bialick v Megan Mary, Inc*, 286 Mich App 359, 362; 780 NW2d 599 (2009). At issue in this case is whether Walker owed plaintiffs a duty to advise them as to the adequacy of their insurance coverage. Whether a duty exists is a question of law for the court to decide. *Murdock v Higgins*, 454 Mich 46, 53; 559 NW2d 639 (1997).

The fiduciary duties owed by an insurance agent vary depending upon "the agent's status as an independent or exclusive agent." *Genesee Food Servs, Inc v Meadowbrook, Inc*, 279 Mich App 649, 654; 760 NW2d 259 (2008). An exclusive agent—an agent that exclusively represents one insurance company—is deemed the agent of the insurer. See *Harts*, 461 Mich at 8-9. In contrast, an "independent insurance agent or broker is considered an agent of the insured rather

than an agent of the insurer." *Genesee Food Servs*, 279 Mich App at 656 (quotation marks and citation omitted). In this case, the parties agree that Walker is an independent insurance agent.

An independent agent owes a duty of loyalty and good faith. See *Burton v Burton*, 332 Mich 326, 337; 51 NW2d 297 (1952) (holding that an agent owes a duty of good faith and loyalty to the agent's principal). In *Genesee*, this Court explained the duty owed when an independent insurance agent assists a customer with procuring an insurance policy:

> [B]ecause [the agents] were independent insurance agents when they assisted [the] plaintiffs, their primary fiduciary duty of loyalty rested with [the] plaintiffs, who could depend on this duty of loyalty to ensure that [the agents] were acting in their best interests, both in terms of finding an insurer that could provide them with the most comprehensive coverage and in ensuring that the insurance contract properly addressed their needs. [*Genesee Food Servs*, 279 Mich App at 656.]

Thus, as an independent agent, Walker owed plaintiffs a duty to provide them with the most comprehensive coverage and ensure that the insurance obtained properly addressed their needs.

Michigan law recognizes a cause of action in tort for an insurance agent's failure to procure requested insurance coverage. *Haji v Prevention Ins Agency, Inc*, 196 Mich App 84, 87; 492 NW2d 460 (1992). Yet, as a general rule "an insurance agent does not have an affirmative duty to advise a client regarding the adequacy of a policy's coverage." *Mate v Wolverine Mut Ins Co*, 233 Mich App 14, 22; 592 NW2d 379 (1998) (quotation marks and citation omitted). "Instead, the insured is obligated to read the policy and raise questions concerning coverage within a reasonable time after issuance." *Id*. (quotation marks and citation omitted).

In *Harts*, our Supreme Court examined whether an "insurance agent owes an affirmative duty to advise or counsel an insured about the adequacy or availability of coverage." *Harts*, 461 Mich at 2. The Court determined that, "except under very limited circumstances" there was no duty to advise as to the adequacy of coverage. *Id*. Although the defendant insurance agent in *Harts* was an exclusive agent, not an independent agent, the following public policy argument is nonetheless germane:

> [P]laintiffs encourage this Court to eliminate the general no-duty-to-advise rule and replace it with a rule that would impose a duty to advise in cases such as the one at bar, which, to be perfectly clear, would apparently be all cases concerning the purchase of insurance. However, we decline this invitation in light of the public policy established by the Legislature's active role in this area and the previously noted compelling reasons that militate against the imposition of such a duty. Rather, we agree with the Wisconsin Supreme Court . . . which, when faced with such an issue, stated that "if such a duty is to be imposed on the [insurance agent], it should be imposed as a statutory one and not an implied judicial one." [*Harts*, 461 Mich at 11-12, quoting *Nelson v Davidson*, 155 Wis 2d 674, 683; 456 NW2d 343 (1990) (second alteration in original).]

In *Harts*, our Supreme Court held that the general no-duty-to-advise rule "is subject to change when an event occurs that alters the nature of the relationship between the agent and the

insured." *Harts*, 461 Mich at 10. The alteration of the relationship has been described as a "special relationship" that gives rise to a duty to advise on the part of the agent. *Id.* The Court held that the "special relationship" arises in the following circumstances:

> (1) the agent misrepresents the nature or extent of the coverage offered or provided, (2) an ambiguous request is made that requires a clarification, (3) an inquiry is made that may require advice and the agent, though he need not, gives advice that is inaccurate, or (4) the agent assumes an additional duty by either express agreement with or promise to the insured. [*Id.* at 10-11 (citations omitted).]

"When a special relationship exists, an agent assumes a duty to advise the insured regarding the adequacy of insurance coverage." *Zaremba Equip, Inc v Harco Nat'l Ins Co*, 280 Mich App 16, 28; 761 NW2d 151 (2008). Plaintiffs contend that they had a special relationship with appellee under the first, second, or third *Harts* factors.

## 1. MISREPRESENTATION

Plaintiffs argue that Walker misrepresented the nature and extent of coverage provided, because Lowell testified that she told Russo she wanted full coverage to replace her building and contents if anything happened to them, as reflected in the 2008 and the 2010 Acord Applications. Although viewing the facts in the light most favorable to plaintiffs shows that they requested replacement cost coverage, nothing in the record indicates that Walker represented to plaintiffs that they obtained replacement cost coverage.[4] The various Acord Applications only indicate that plaintiffs applied for replacement cost coverage with a $643,000 policy limit on the building and a $108,000 policy limit on personal property. Further, the policies that plaintiffs received clearly indicate that the building was covered at ACV, rather than replacement cost value. Further, Russo testified that she told Lowell that she did not obtain replacement cost coverage.

Russo also testified that she advised Lowell to contact a contractor to determine the adequacy of the coverage—an issue on which plaintiffs did not present any contradictory evidence. Instead, plaintiffs assert that a handwritten notation made by Russo on an e-mail sent to North Pointe about getting a "contractor estimate to re[buil]d" could have been a reminder to Russo to contact a contractor, not a note that Russo told Lowell to contact a contractor. A party opposing a motion for summary disposition cannot rest on mere speculation, but instead must back a factual position with proof. See *McCart v J Walter Thompson USA, Inc*, 437 Mich 109, 115; 469 NW2d 284 (1991).

---

[4] Based on the 2008 and 2010 Acord Applications, it appears that Walker applied for the exact coverage that plaintiffs requested. The fact that plaintiffs instead received an ACV policy does not create a misrepresentation in what they sought in the applications.

## 2. AMBIGUOUS REQUEST

Plaintiffs also assert that the second *Harts* circumstance was established. "An example of an ambiguous request for coverage that might in certain circumstances require clarification is the request for 'full coverage.' " *Harts*, 461 Mich at 10 n 11. In this case, Lowell's deposition makes clear that she requested "full coverage" so "if anything ever happened, it would be replaced." Although Lowell's request for "full coverage" could have been ambiguous if not coupled with any other statements, Lowell defined what she believed full coverage was— replacement cost value. Subsequently, Russo applied for replacement cost coverage. Russo testified that when the policy came back ACV, she told Lowell that the policy was not a replacement cost policy. Further, she expressly did not undertake a duty to determine the adequacy of the policy limits. Russo's uncontradicted testimony shows that she told Lowell that she did not know if there was adequate insurance coverage, and she suggested that Lowell ask a contractor for an estimate.

## 3. INACCURATE ADVICE

Plaintiffs also assert that the third *Harts* circumstance was established because Walker agreed in the 2008 and 2010 Acord Applications to obtain a replacement cost coverage insurance policy, but instead mistakenly obtained an ACV policy and did not inform plaintiffs of the error. The third *Harts* circumstance looks at whether an inquiry was made that may require advice, and the agent, though he need not, gave inaccurate advice. *Harts*, 461 Mich at 10-11. Nothing in the record indicates that Russo or Walker ever represented that the policy limits plaintiffs applied for would fully cover potential losses. Instead, the facts show that Russo expressly informed Lowell that she did not know the value of the property and told Lowell to get a contractor to give her an estimate. Accordingly, plaintiffs have not shown that Walker had any duty to apprise them of the adequacy of the requested insurance coverage.

Affirmed.

/s/ Peter D. O'Connell
/s/ Karen M. Fort Hood
/s/ Michael F. Gadola