# APRIL TERM, 1920.*

---

PEOPLE *v.* VANDER HEIDE.

1. CRIMINAL LAW—INTOXICATING LIQUORS—IDENTITY OF DEFENDANT —EVIDENCE—SUFFICIENCY.

In a prosecution for the unlawful transportation of intoxicating liquor in violation of section 38, Act No. 338, Pub. Acts 1917, testimony by a transfer man identifying defendant as the person who delivered to him checks for trunks containing whisky, shipped as baggage from Chicago, with instructions where to deliver them, *held*, sufficient to carry the question of defendant's identity to the jury.

2. SAME—INTENT—EVIDENCE—SUFFICIENCY.

While it could well be contended that, under the law creating the offense charged, motive and intent are not involved, evidence of intent, if essential, *held*, adequate to support conviction.

3. SAME—TRIAL—INSTRUCTIONS.

Where the general charge in substance covered a requested instruction as to proof, it was not error to refuse the latter.

4. SAME—POSSESSION—EVIDENCE—CONSTRUCTIVE POSSESSION.

Where defendant had possession of the baggage checks which entitled him to possession of the trunks, and delivered them to a transfer man for delivery he was constructively in possession; possession in such cases not being limited to manual touch or personal custody.

Exceptions before judgment from Ottawa; Cross (Orien S.), J. Submitted April 16, 1920. (Docket No. 121.) Decided June 7, 1920.

John Vander Heide was convicted of violating the liquor law. Affirmed.

---

*Continued from Vol. 210.

*Visscher & Robinson,* for appellant.

*Fred T. Miles,* Prosecuting Attorney, for the people.

STEERE, J.    Defendant was tried by a jury in the circuit court of Ottawa county and convicted of a violation of the transportation feature of Act No. 338, Pub. Acts 1917, passed by the legislature to carry into effect the prohibition constitutional provision adopted by popular vote at the general State election held in the fall of 1916, which directed the enactment of appropriate enabling legislation for its enforcement. Defendant's alleged delinquency was in connection with an unlawful transportation of 58 quart bottles of whisky in violation of section 38 of said act, specifically charged in the information filed against him as follows:

"Said original package and bottles containing such intoxicating liquor so consigned to and possessed by him, the said John Vander Heide, not having clearly and plainly stenciled, branded or printed thereon in a conspicuous place or in any place marked in large letters (or any letters) where it could be plainly seen and read the following: 'This package contains intoxicating liquors,' nor did the name and address of the consignor nor the consignee, nor the quantity, nor kind of intoxicating liquors, nor the specific purpose for which said liquors were to be used appear thereon printed, branded or stenciled."

When arraigned defendant pleaded not guilty. Upon the trial no testimony was introduced by the defense. At the close of plaintiff's testimony both parties rested and defendant's counsel moved for a directed verdict on two grounds, as follows:

"*First,* that there has been a failure on the part of the evidence introduced by the people to identify the respondent as being connected in any way with the crime charged; a failure of identification.

"*Second,* that even if the evidence were sufficient to support an identification and connect the respond-

ent with this crime, that there has been absolutely no proof showing any guilty knowledge or intent on the part of the respondent to connect him in any way, shape or manner with the crime charged in the information."

This motion was denied. Defendant's counsel requested the court to charge the jury as follows:

"You are instructed that in order to find the defendant guilty, he must be identified by clear and convincing evidence and that a mere guess or hazy notion that defendant is the guilty party is not that degree of certainty required by law to associate this defendant with the crime."

Error is assigned on the refusal of the court to direct a verdict for defendant and to give the above instruction as requested.

In outline, the testimony of the prosecution showed that defendant and one Doyle, who were in familiar association together, had been partners in the saloon business in Holland, Michigan, until saloons were closed under the prohibition law, and later in the soft drink business for a time; that on Friday evening, January 10, 1919, they were seen by the officer whose beat was at and around the Pere Marquette railroad passenger station in Holland, taking the south-bound Chicago train together, and were not again seen by him until the following Sunday evening when he saw them through the window playing cards "in Dave Blom's saloon, or soft drink parlor or whatever you call it," which place was shown to have been a saloon in Holland before the State went dry.

On Saturday night, January 11th, some time before morning, a baggageman called attention of the policeman whose beat was around the station to a couple of trunks which had arrived on the night train from Chicago emitting a pungent odor of whisky, of which the officer testified: "It was so strong it almost knocked me over." The baggageman in charge testified that

one of the trunks was leaking whisky when they arrived on the night train, that the baggage checks were the only identifying marks upon them, there being nothing to indicate what they contained, by whom they were sent nor to whom they belonged, and the police department took possession of them. The chief of police was notified and an examination made, in which they found one trunk in such condition that it could be opened by lifting the latches which held the lid. The contents consisted of quart bottles packed in excelsior two or three of which had been broken. Besides those broken, 58 bottles of whisky were found in the two trunks. They were watched at the station and an investigation resulted in finding passenger baggage checks corresponding with the numbers, etc., of the checks on the trunks in possession of a transfer company with a card attached showing where they were to be delivered.

A transfer man named Cook, who worked for the company, testified that on Saturday night about 11 o'clock he was called to Blom's place to do taxi service for Doyle, whom he found there in an intoxicated condition, and took him, with two other men who went along and cared for him, to Doyle's rooming house; that just as they were leaving Blom's place, Doyle called out to some one close by not to forget "those checks," and was answered, "Never mind the trunks." He then drove Doyle to his house and took one of the men who had gone along back to Blom's, as directed. After he got out of the taxi a man came out of the place and handed Cook the two identified Pere Marquette baggage checks which called for those trunks, with instructions to deliver the small trunk at Doyle's and the large trunk at Blom's place, at the back door. He wanted them delivered that night and Cook replied he could not deliver them then as he had other work to do, but it would be done the first thing in the

morning, and the man said, "All right." Cook then went back to the transfer office and put the checks on the spindle with a card showing where trunks were to be delivered.

As to identification of the party who gave him the checks with instructions where to deliver the trunks, Cook was manifestly a reluctant witness. Asked on direct-examination who it was, he replied, "I hardly gave it much thought at the time, but afterwards I was thinking it over, I thought it was Mr. Vander Heide done it." He admitted he did not then or ever afterwards think it was any other person, but on cross-examination said he was not sure, and would not as a matter of fact swear it was Vander Heide. Emphasizing this reply and reviewing his at times somewhat conflicting answers, it is insisted a verdict should have been directed for the defense because identification, which rests alone on Cook's uncorroborated testimony, was but a guess not "made at the time," merely "a conjecture made later" based on "nothing tangible," which furnished no substantial, legal evidence to sustain a determination by the jury, beyond a reasonable doubt as the law reouires, that Vander Heide was the party.

Cook admitted he had been acquainted with defendant for some time, been employed by him in taxi service and they had "visited quite a bit," that defendant had a peculiarity in his walk which Cook had noticed when he "done taxing for him"; that it was a clear night when he received the checks at Blom's place and he saw the party who gave them to him as he came out of there and walked up to the side of his taxi, and then noticed his walk and manner. Later he testified: "I didn't pay any particular attention to him until he started—turned around and started back again. I noticed his walk when he went back in." Asked on cross-examination: "What was there about this man that

made you think he was Vander Heide," he replied, "Why, the way of his walking put me in mind of him." Asked if there was anything else besides his walk he said, "Only his stature and build." He was able to describe with some particularity the peculiarity in defendant's walk and volunteered the information that it resulted from rheumatism with which he was afflicted.

Of the identification of Doyle at Blom's place on that Saturday night, there is no question. Defendant was an associate and former partner of Doyle in the saloon business. The night before (Friday) they took the train for Chicago together. The man who stepped up beside Cook's taxi and handed him two checks for trunks which came in as baggage from Chicago that night wanted them delivered the same night, described them by their size, and directed Cook to deliver the small one at Doyle's and the large one at the back door of the place from which he had just come out. This man was of the stature, build, and had the peculiar walk of defendant; Cook "thought it was Mr. Vander Heide done it," and conceded he did not then or afterwards think it was any other person. It was shown that on the next (Sunday) night defendant and Doyle were together in Blom's place in a game of cards, that Doyle appeared somewhat under the influence of liquor and defendant in the conversation cautioned him to "look out,"—referring to something which had happened in Chicago as "last night." There was abundant evidence, direct and circumstantial, tending to establish defendant's identity to carry the question to the jury, and we discover no legal reason to disturb their conclusions in that particular. *People* v. *Henshaw,* 52 Mich. 564; *People* v. *Stanley,* 101 Mich. 93; Underhill on Criminal Evidence (2d Ed.), § 55.

Upon the contention that the prosecution wholly failed to show any criminal intent, it could well be

contended that, under the law creating the offense charged, motive and intent are not involved. *People* v. *Hatinger,* 174 Mich. 333; *People* v. *Worges,* 176 Mich. 685; *People* v. *Emmons,* 178 Mich. 126 (Ann. Cas. 1915D, 425). But assuming that it was essential to conviction that intent be shown, with defendant identified as the person in possession of the trunk checks which he gave to Cook with a description of the baggage and directions where to deliver it, taken in connection with other facts and circumstances proven, there was adequate evidence of intent to support the verdict.

The quoted instruction requested by the defense, refusal of which is urged as reversible error, was in substance covered by the general charge. The court early in the charge, after fairly stating the issue and claims of the respective sides, said:

"Therefore it will be your duty as jurors to commence your deliberations in this case with the presumption of the respondent's innocence uppermost in your minds, and to continue with that presumption of respondent's innocence in your minds until you become convinced from the evidence and beyond a reasonable doubt that he is guilty. It is the duty of the people to establish the offense with which the respondent is charged in every essential element or ingredient of that offense by proof that convinces you of his guilt and the truth of the charge made against him beyond a reasonable doubt."

This was emphasized with explanations relative to reasonable doubt, etc., as applied to the elements of the offense charged, in plain, careful and impartial instructions. We find no prejudicial error in the omission to give the request tendered.

Those trunks containing liquor were checked and transported as passenger baggage with no identification marks except the baggage checks upon them corresponding in numbers with those given the party who

checked them, which were *prima facie* evidence of ownership, right to possession and control when the transportation was completed. The trunks had arrived at their destination point, defendant was there in possession of the checks which entitled him to them, he knew the time of their expected arrival, what they were, and by authority of the checks he held assumed to exercise dominion and control over the property as consignee. He turned the checks over to the transfer man engaged as his agent with description of the trunks, and directions where to deliver them in Holland, to which place they were consigned, with particular instructions that the largest should be delivered at the back door of the place where he then was, thus constructively receiving and in possession of them as the consignee. Possession in such cases is not limited to manual touch or personal custody. In that connection the recent case of *People* v. *Hassell*, 208 Mich. 236, is illuminating.

The judgment is affirmed, and the case remanded for further proceedings.

MOORE, C. J., and BROOKE, FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.