PEOPLE v KONRAD

Docket No. 96938. Argued March 8, 1995 (Calendar No. 17). Decided July 19, 1995.

Mark Konrad was charged in the Detroit Recorder's Court with possession with intent to deliver over 650 grams of cocaine and conspiracy to possess over 650 grams of cocaine. The court, Paul S. Teranes, J., denied the defendant's motion to suppress the evidence. Thereafter, the defendant was convicted of both charges, but was granted a new trial on his own motion. On retrial, the defendant was convicted by a jury of both charges, Vera M. Jones, J. The Court of Appeals, MURPHY, P.J., and SHEPHERD and T. G. KAVANAGH, JJ., reversed in an unpublished opinion per curiam (Docket No. 113526). On remand, the Court, MURPHY, P.J., and GRIBBS and SHEPHERD, JJ., affirmed in an unpublished opinion per curiam (Docket No. 150317). The defendant appeals, asserting that there was insufficient evidence to satisfy the element of possession.

In an opinion by Justice BOYLE, joined by Justices RILEY, MALLETT, and WEAVER, the Supreme Court held:

There was sufficient evidence from which a rational trier of fact could conclude that the defendant possessed the cocaine.

1. Statements by the defendant to the police were properly admitted, and the trial court did not err in denying his motion for a directed verdict. The corpus delicti rule is designed to prevent the use of a defendant's confession to convict him of a crime that did not occur. Specifically, the rule provides that a defendant's confession may not be admitted unless there is direct or circumstantial evidence independent of the confession to establish the crime. In this case, the corpus delicti was established by evidence independent of the defendant's confession that the cocaine existed and was possessed by someone. Proof of the identity of the perpetrator is not a part of the corpus delicti. It is sufficient to show that the crime was committed by someone.

2. Ample evidence was presented from which a rational trier of fact could conclude beyond a reasonable doubt that the defendant constructively possessed the cocaine through his agent. Proof of actual physical possession of cocaine is unnecessary for a conviction; proof of constructive possession will

suffice. Possession need not be exclusive and may be joint, with more than one person actually or constructively possessing a controlled substance. The essential question is whether the defendant had dominion or control over the controlled substance, which in this case means the right or recognized authority in the criminal milieu to possess the substance.

Affirmed.

Chief Justice BRICKLEY, joined by Justices LEVIN and CAVANAGH, dissenting, stated that the facts proved at trial are insufficient to support the defendant's conviction of possession of cocaine.

While direct proof of actual physical possession of controlled substances at the time of arrest is not necessary for a conviction under MCL 333.7401; MSA 14.15(7401), an analysis of constructive possession measured by dominion and control results in a vague and overinclusive test of possession. The basic question is did the defendant or an agent at the time of arrest have actual physical possession of controlled substances or can it be inferred from the evidence that the defendant or the agent earlier had possession, i.e., had constructive possession?

In this case, to argue that the defendant possessed the subject drugs is to expand the meaning of the term possession beyond its ordinary meaning in contravention of prior precedent of the Supreme Court. While the defendant may be culpable for an inchoate crime, i.e., attempted possession, he cannot be said to be guilty of the substantive offense of possession.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief, Research, Training and Appeals, and *Olga Agnello,* Assistant Prosecuting Attorney, for the people.

*Carl Ziemba* for the defendant.

BOYLE, J. The question presented is whether there was sufficient evidence from which to conclude that the defendant possessed cocaine. We hold that there was, and affirm the decision of the Court of Appeals.

I .

The events leading to the arrest of the defendant took place on August 30, 1984, in a K mart parking lot in Livonia, where it appears that undercover officers of the Livonia Police Department gave $550 in marked funds to a woman named Laurie Clark for the purpose of purchasing cocaine. Sergeant Peter Kunst gave the money to Ms.. Clark, who then drove her car across the parking lot to a fence that ran between the K mart parking lot and the neighboring McDonald's parking lot. According to surveillance officers, a man got into her car, and Ms. Clark drove the car several feet before stopping. The same man then left the car, jumped over the fence into the McDonald's parking lot, got on a motorcycle, and sped away.

The police arrested Laurie Clark and a man named Gordon Grimes for the cocaine delivery in the K mart parking lot. The police did not find any of the marked money in either Ms. Clark's or Mr. Grime's possession.

Backup surveillance officers followed the motorcycle for a short distance. Although they lost sight of it in traffic, they managed to record the license plate number. The motorcycle was registered to the defendant, Mark Konrad.[1]

Shortly thereafter, a number of police officers arrived at Konrad's home. Parked in the driveway was the motorcycle that had been at the scene of the controlled purchase. Sergeant John Jandasek testified that a woman answered the door and let the officers into the house where he arrested the

---

[1] The source of the facts described thus' far is the prosecution's response to a motion to suppress filed before the defendant's first trial. This information was not presented at the trial in question. We include it solely as background.

defendant. At that time, the defendant said, "What you are looking for is in a locked room in the basement. I have the keys." Sergeant Jandasek left the defendant in the custody of other police officers while he went to request a warrant to search the house.

Officer William Bryant testified that he searched the defendant incident to his arrest. In the defendant's pockets, he found a large roll of currency and a key. Officer Bryant testified that a scout car arrived to take the defendant to the police station. As he was being led away, the defendant said to his wife, "Call Joel and tell him not to come and look at my bike." The defendant then said to Officer Bryant, "This guy is supposed to come and look at my motorcycle. I think he wants to buy it." The defendant's wife asked him for a phone number, and the defendant gave it to her. Mrs. Konrad then began walking toward the kitchen where the phone was located when the defendant said to her, "Not now, do it later."

Sergeant Kunst testified that when he arrived at the defendant's home, still undercover, officers were already there awaiting a search warrant. As he waited, he turned away ten to twelve people who arrived at the house during a forty-five minute period. Just after 6:30 P.M., as he was waiting in the front yard, a young man approached carrying a box. On top of the box was an egg-shaped object wrapped with masking tape and partially covered with a pair of khaki shorts and a Detroit Tigers baseball cap. As the person came close to the house, he asked Sergeant Kunst whether the defendant was home. Sergeant Kunst told the man, later identified as Joel Hamp, that the defendant was not home but that his wife was inside. Sergeant Kunst asked, "Do you have something

for him?" Hamp said that he did and walked up the walkway.

As Sergeant Kunst followed, Hamp entered the house. Inside, Sergeant Sitner identified himself as a police officer. Hamp turned, knocked Sergeant Kunst to the floor, and ran out of the house. Sergeant Kunst and another officer chased the defendant several blocks on foot, before apprehending and arresting him. The egg-shaped object, which Hamp had dropped on the lawn, contained 881.8 grams of cocaine.

Later, Sergeant Kunst used the key taken from the defendant to open a door in the basement. There he found two scales, boxes of baggies, over one hundred zip-lock baggies, and at least fifteen partially filled or empty bottles of cutting-agents. He also found two sifters, which are used to mix cocaine with diluting powders. Behind paneling in the corner, he found just under $10,000 in cash. From the bedroom, Sergeant Kunst seized a phone with special electronic equipment.

Sergeant Kunst testified that he returned to the police station about midnight, at which point he interviewed the defendant for about thirty minutes. Sergeant Kunst testified[2] that Konrad confessed that he had arranged to purchase cocaine from a man named Chris. He later gave $40,000 as payment for the kilogram of cocaine to a man named Todd who had come to his house. Konrad understood that Chris would be traveling either to Tennessee or Florida to obtain it. On the afternoon of August 30, 1984, Joel Hamp called Konrad and

[2] Because of a court reporter error, part of the transcript of the second trial is unavailable, including portions of Officer Kunst's and Officer Perkins' testimony. We rely on the officers' testimony as it appears in the transcript of the first trial because defense counsel has stipulated, both in his brief and at oral argument, that the officers' testimony at the second trial was essentially the same as it was at the first trial.

told him that "everything is together," meaning
that Hamp had the cocaine and was ready to
deliver it to Konrad. They arranged that Hamp
would deliver it to Konrad's home at seven that
evening. Konrad told Officer Kunst that this was
to be the fourth such shipment from Chris and
Joel. In each of the three previous transactions,
Joel had delivered the cocaine to Konrad's home.
Konrad confessed to having earned $80,000 in the
last year by selling cocaine, and described how he
had spent the profits. He also told Kunst that he
had purchased a special phone that could detect
wire taps.

Officer Perkins also interviewed the defendant.
He testified that Konrad had admitted giving
$40,000 to Joel as payment for the cocaine. Perkins
also testified that Konrad told him that he knew
Joel would be traveling either to Florida or Ten-
nessee to pick up the cocaine. Konrad confessed
that he had recently started selling cocaine and
that Joel was obtaining the kilogram at a good
price.

The defendant was charged with possession with
intent to deliver over 650 grams of cocaine, MCL
333.7401; MSA 14.15(7401), and with conspiracy to
possess the same amount, MCL 750.157a; MSA
28.354(1). He was tried in December, 1986, and
convicted of both charges, but was granted a new
trial on his own motion.

In November, 1988, defendant was tried a sec-
ond time and convicted by a Recorder's Court jury.
After initially reversing the defendant's convic-
tion,[3] the Court of Appeals affirmed in an unpub-

_____

[3] The Court reversed defendant's conviction on the ground that the
prosecutor had violated the Interstate Agreement on Detainers. MCL
780.601; MSA 4.147(1). On the prosecutor's application for leave to
appeal, however, this Court ordered the Court of Appeals to direct the
Recorder's Court to hold a hearing and make findings about whether

lished opinion per curiam. The defendant applied
to this Court for leave to appeal. We granted leave
"limited to whether there was sufficient evidence
to satisfy the element of possession . . . ." 447
Mich 1011 (1994).

II

The defendant claims that the trial court erred
in denying his motion for a directed verdict of
acquittal on the count of possession with intent to
deliver because there was insufficient evidence
that he possessed the cocaine. This claim rests on
the defendant's argument that his statements to
police should have been excluded under the corpus
delicti rule: "the trial court erred in denying the
motion for a directed verdict because the record is
devoid of any evidence whatever—aside from the
evidence contained in the two statements allegedly
made by defendant to the police—to support the
prosecution's theory that defendant either con-
structively possessed the cocaine or that he aided
and abetted Hamp in Hamp's physical possession
of the cocaine . . . ." In light of our specific grant
order, this argument, which concerns the admissi-
bility of evidence rather than its sufficiency, is not
well taken.

Moreover, the argument is fallacious. The cor-
pus delicti rule is designed to prevent the use of a
defendant's confession to convict him of a crime
that did not occur. See *People v Williams,* 422
Mich 381, 391; 373 NW2d 567 (1985); *People v
Hughey,* 186 Mich App 585, 587-588; 464 NW2d
914 (1990). Specifically, the rule provides that a
defendant's confession may not be admitted unless

the defendant had ever requested a final disposition. Because it had
been the prosecutor, not the defendant, who asked for a trial in state
court under the IAD, the Court proceeded to affirm the conviction.

there is direct or circumstantial evidence independent of the confession establishing (1) the occurrence of the specific injury (for example, death in cases of homicide) and (2) some criminal agency as the source of the injury. *People v Cotton,* 191 Mich App 377, 394; 478 NW2d 681 (1991).

The Legislature has established that no person may legally possess cocaine unless that person falls within a statutory exception, see MCL 333.7401; MSA 14.15(7401); MCL 333.7403; MSA 14.15(7403), and the burden of proving an exception falls on the person claiming it, see MCL 333.7531; MSA 14.15(7531). We have no common-law authority to redefine the body of this crime. Therefore, the corpus delicti was satisfied by evidence independent of defendant's confession that the cocaine existed and was possessed by someone. See, e.g., *United States v Di Orio,* 150 F2d 938, 939 (CA 3, 1945) (the corpus delicti for possession of an unregistered still was satisfied by independent evidence of the existence of an unlawful still). The defendant's contention that proof of the corpus delicti requires evidence that the cocaine was constructively possessed *by the defendant* is incorrect. "Proof of the identity of the perpetrator of the act or crime is not a part of the corpus delicti." *Di Orio,* 150 F2d 939. It is sufficient to show that the crime was committed *by someone.* See also LaFave & Scott, Criminal Law (2d ed), § 1.4(b), pp 18-19. In the words of a noted authority, the position that the corpus delicti of a crime includes the identity of the perpetrator is "too absurd indeed to be argued with," because it would require that the entire crime be proved before a confession could ever be admitted. 7 Wigmore, Evidence (Chadbourn rev), § 2072, p 526.

III

Given that the defendant's statements to police

were properly admitted, we hold that the trial
court did not err in denying his motion for a
directed verdict. The defendant argues that there
was insufficient evidence to establish that he pos-
sessed the cocaine in question.[4] Proof of actual
physical possession, however, is unnecessary for a
conviction under MCL 333.7401; MSA 14.15(7401);
proof of constructive possession will suffice. See
*Wolfe, supra* at 508, 519-520; 489 NW2d 748 (1992).
Moreover, possession need not be exclusive and
may be joint, with more than one person actually
or constructively possessing a controlled substance.
*Id.* at 520; *United States v Staten,* 189 US App DC
100, 105; 581 F2d 878 (1978).

The essential question is whether the defendant
had dominion or control over the controlled sub-
stance. *People v Germaine,* 234 Mich 623, 627; 208
NW 705 (1926). In the foremost discussion of what
is necessary to have dominion or control over
drugs, Judge Posner explained that a defendant
"need not have them literally in his hands or on
premises that he occupies but he must have the
right (not the legal right, but the recognized au-
thority in his criminal milieu) to possess them, as
the owner of a safe deposit box has legal posses-
sion of the contents even though the bank has
actual custody." *United States v Manzella,* 791
F2d 1263, 1266 (CA 7, 1986). Similarly, our Court
has recognized that, regarding a predecessor stat-
ute, it not only "reach[es] the actual peddler of
narcotics who carries his stock in trade in hand or
secretes it, but it reaches the kingpin of the nar-

---

[4] Although the defendant challenges the sufficiency of the proofs
generally, he does not specifically challenge the sufficiency of the
evidence regarding intent to deliver. We note that the evidence,
including the quantity and packaging of the substance, is sufficient to
justify a finding that the possessor intended to deliver the drugs. Cf.
*People v Wolfe,* 440 Mich 508, 524; 489 NW2d 748 (1992).

cotics traffic who controls its disposition but never himself possesses the stuff." *People v Harper,* 365 Mich 494, 507; 113 NW2d 808 (1962).

This Court also approved the notion of constructive possession in *People v Bercheny,* 387 Mich 431; 196 NW2d 767 (1972). The defendant, along with five others, had been convicted of possession of heroin, conspiracy to possess heroin, and control of heroin. *Id.* at 434. When the police entered the house where the arrest took place, the defendants "were found in a small living room in which a quantity of heroin was located, to which all of the defendants were situated in close proximity." *People v Iaconis,* 29 Mich App 443, 449; 185 NW2d 609 (1971). The Court of Appeals held that the evidence was sufficient to support a finding that the defendants possessed or controlled the heroin:

> The people presented evidence tending to show among other things that, on several occasions, while the premises in question were under surveillance, defendants frequently arrived at the premises and remained there for short periods of time; that certain of the defendants left the premises in a manner which indicated to an officer on the scene, who testified that he had had experience in observing persons under the influence of heroin, that they were under such an influence; that when defendants, as well as others entered the premises, they often went through a procedure, as they did on the night of the raid, i.e., they would knock on the door, look through a window fan, knock again, after which a blind was opened in a window, and closed again, and the door was then opened to them; that, on the night of the raid defendants were found in a small room in close proximity to heroin and narcotic paraphernalia; that one defendant, on the night of the arrests, had blood marks on his shirt and a raised black and blue mark and two red dots on his arm, and another had scars on the inner portion of both arms. [*Id.* at 459.]

This Court granted leave and affirmed, adopting the opinion of the Court of Appeals.[5] 387 Mich 435.

In the present case, there is ample evidence[6] from which a rational trier of fact could conclude beyond a reasonable doubt that the defendant constructively possessed the cocaine through his agent, Joel Hamp. See *Wolfe, supra* at 514. The evidence permits the conclusion that the defendant had paid for the drugs and that they were his —that is, that he had the intention and power, in the sense referred to by Judge Posner, to exercise control over them. There is evidence that the defendant made a prior arrangement with Joel Hamp and others to purchase a kilogram of cocaine, that he had already paid for the cocaine, that he told Joel to come to his house about seven that evening, and that, after he had been arrested, he had instructed his wife to direct Joel not to come. Joel arrived after 6:30 P.M. and acknowledged that he had something for the defendant.[7]

Although most cases discussing constructive pos-

[5] This Court also distinguished *State v McGee,* 473 SW2d 686 (Mo, 1971), relied on by the defendant. That case involved marijuana found in containers (the heroin in *Bercheny* was in open piles) in a house that the defendant shared with two friends. 473 SW2d 687. Consequently, the presence of the marijuana "did not raise the same inference as in the instant case." 387 Mich 434-435.

[6] Even in a case relying on circumstantial evidence, the prosecution need not negate every reasonable theory consistent with the defendant's innocence, but merely introduce evidence sufficient to convince a reasonable jury in the face of whatever contradictory evidence the defendant may provide. *People v Wolford,* 189 Mich App 478, 480; 473 NW2d 767 (1991); *People v Gravedoni,* 172 Mich App 195, 197; 431 NW2d 221 (1988); *People v Daniels,* 163 Mich App 703, 707; 415 NW2d 282 (1987).

[7] The dissenting opinion argues that "[t]here was no evidence produced at trial from which a reasonable jury could conclude beyond a reasonable doubt that" Hamp was an agent of the defendant for the purpose of this transaction. *Post* at 283. The dissent appears to assume that if Hamp was not the criminal equivalent of the defendant's full-time exclusive employee, then the defendant cannot be found responsible for any of his acts. This is not the case, even under formal agency principles which provide for agents "authorized to

session through a defendant's agents involve agents who have *sold* controlled substances,[8] Michigan courts have recognized that defendants also may constructively possess substances that their agents have *bought* for them. In *People v Davis,* 109 Mich App 521, 527; 311 NW2d 411 (1981), the Court held that "a finder of fact could readily conclude that defendant had 'acquire[d] or obtain[ed] possession,'" of prescription drugs that a co-worker had agreed to pick up, pay for, and deliver to the defendant, "whereupon the defendant would reimburse the co-worker for the purchase price." *Id.* at 525. The co-worker was apprehended by police after he obtained the prescription but before he delivered it to defendant. The panel rejected defendant's argument that "since he never had possession of the controlled substance, the most he could have been convicted of is an attempt to obtain a controlled substance . . . ." *Id.*

Decisions from other jurisdictions support this result. The circumstances strongly indicate that the package carried by Mr. Hamp belonged to the

conduct a single transaction or a series of transactions not involving continuity of service." Restatement Agency, 2d, § 3(2), p 15. A "special agent" can bind a principal by contracts or conveyances that he is authorized to make. See Restatement Agency, 2d, § 161A, pp 382-383; *Rowen & Blair Electric Co v Flushing Operating Corp,* 66 Mich App 480; 239 NW2d 633 (1976).

We do not hold that Joel Hamp was the criminal equivalent of the defendant's general agent, which might render the defendant liable for any cocaine Hamp possessed during that time. We hold only that there is sufficient evidence to convict the defendant of possessing cocaine that had been procured by Hamp but that belonged to the defendant. Assuming arguendo that the Restatement principles govern, it provides that wide discretion regarding the assigned transaction is consistent with special, as opposed to general, agency. Restatement Agency, 2d, comment to § 3, p 16.

[8] This appears to reflect the practical reality that law enforcement is much more likely to detect and apprehend drug dealers than drug buyers, and that relatively greater penalties for drug dealers make them more likely to go to trial and subsequently appeal their convictions, leading to more published appellate decisions.

defendant and merely awaited delivery. The United States Court of Appeals for the Fifth Circuit held these facts sufficient to support a finding of constructive possession in *United States v Harold,* 531 F2d 704 (CA 5, 1976). In that case, defendant Tom Barber was waiting in a car at Houston Intercontinental Airport while his wife picked up an air freight package addressed to him that "contained 160 balloons filled with heroin." He apparently never took possession of the package, because the defendant and his wife, along with their passenger, Richard Harold, were arrested as she returned to the car. Nevertheless, the court rejected his challenge of the sufficiency of the evidence: "The fact that the package containing the heroin was addressed to Tom Barber, and that his wife picked it up apparently as his agent while he waited outside in his car, is enough to indicate sufficient dominion and control by Tom Barber to support the finding of constructive possession." *Id.* at 705.

In addition, the evidence indicates that the defendant had already paid for the cocaine. In some circumstances, courts have held that evidence that a defendant had already paid for cocaine can be sufficient to support a finding of constructive possession. In *United States v Russo,* 796 F2d 1443, 1461 (CA 11, 1986), the court explained that "[w]hile the evidence might have been clearer on this point, it does tend to show that Sanchez and Granados had a financial interest in and at least part ownership of the drugs until they were distributed, sold, and Sanchez and Granados were paid. This would constitute constructive possession by Sanchez."[9]

---

[9] The dissenting opinion asserts that we have "neglect[ed] to state the active role the defendant[s] played in the distribution and sale of these drugs." *Post* at 287. The dissent's statement that "[o]bviously, a

The evidence that the transaction had been completed distinguishes the present case from *United States v Batimana,* 623 F2d 1366 (CA 9, 1980), on which the defendant relies. Like Mr. Konrad, the defendants in *Batimana* did not have actual possession. Unlike Mr. Konrad, however, the defendants in *Batimana* were shown only to have viewed the contents of the drug package and had not yet completed their transaction. "[F]or all that appears, further negotiating may have remained before Lavadia [the deliverer in *Batimana*] would have relinquished his dominion and control . . . ." *Santiago v United States,* 889 F2d 371, 376 (CA 1, 1989).

Defendant also points to the decision by the United States Court of Appeals for the Sixth Circuit in *United States v Ward,* 37 F3d 243, 248 (CA 6, 1994), for the proposition that "[f]ronting cocaine, without additional elements of control, is

finding of constructive possession was based on much more than the defendant's financial interest in the drugs," *id.* at 288, misrepresents the *Russo* opinion. The passage at issue, including the portions omitted by the dissenting opinion, state that although the defendants' involvement was more than financial, their financial interest alone would be sufficient to support a finding of constructive possession:

> Sanchez contends that the evidence does not show that he was ever in actual or constructive possession of the drugs. While the evidence might have been clearer on this point, it does tend to show that Sanchez and Granados had a financial interest in and at least part ownership of the drugs until they were distributed, sold, and Sanchez and Granados were paid. This would constitute constructive possession by Sanchez. In any case, Sanchez did aid and abet the possession of the drugs at Tampa by participating in supplying them and participating in planning their importation into Tampa. His actions manifested his intent to aid in the commission of an offense, and he shared criminal intent with those who actually possessed the drugs at Tampa. When we view the evidence in a light most favorable to the government, we hold that the evidence was sufficient for the jury to find beyond a reasonable doubt that Sanchez was guilty of possessing with intent to distribute marijuana and methaqualone . . . . [796 F2d 1461.]

nothing more than a variation on the traditional buyer-seller relationship." That case, however, was a prosecution of a continuing criminal enterprise under 21 USC 848. The passage cited by defendant concerns whether the government had proven that narcotics laws were violated by people "for whom the defendant is an organizer or supervisor . . . ." The issue, in other words, was whether the defendant controlled, supervised or managed the people selling the drugs. 37 F3d 247. The case stands for the proposition that a defendant does not supervise or manage a person within the meaning of 21 USC 848 simply by selling him cocaine on credit. It does not address the question whether the ˅defendant was controlling the cocaine. More importantly, it does not address the role of the person receiving, as opposed to selling, the cocaine on credit.

IV

For the foregoing reasons, we hold that there was sufficient evidence from which a rational trier of fact could conclude that the defendant possessed the cocaine in question. Because of our resolution of this issue, we need not address the sufficiency of the evidence supporting the prosecutor's alternate theory—that the defendant aided and abetted Mr. Hamp. Therefore, we affirm the decision of the Court of Appeals.

RILEY, MALLETT, and WEAVER, JJ., concurred with BOYLE, J.

BRICKLEY, C.J. (*dissenting*). At issue in this appeal is whether there was sufficient evidence from which to conclude the defendant possessed cocaine for the purposes of MCL 333.7401; MSA

14.15(7401). The majority has concluded that while defendant did not have actual physical possession of the drugs, the doctrine of constructive possession is sufficiently broad to include the conduct of the defendant. Because I believe that the majority has misconstrued the parameters and purpose of this doctrine, and has set a problematic precedent, I respectfully dissent.

I

There can be no dispute that the defendant was a highly active drug dealer who, under Michigan's statutory scheme, deserves and has received life imprisonment. In addition to the charge at issue in this appeal, MCL 333.7401; MSA 14.15(7401), possession with intent to deliver over 650 grams of cocaine, defendant was convicted of MCL 750.157a; MSA 28.354(1), conspiracy to possess over 650 grams of cocaine. Because defendant's appeals concerning the latter charge have all failed, defendant will undoubtedly remain imprisoned for life irrespective of how this Court presently rules. Hence, the primary significance of this decision will be its value as precedent.

II

The concept of "possession" has been a major source of contention and controversy in narcotics cases. Traditionally, the imposition of criminal liability for possession was limited to situations in which actual possession existed. See Singer, *Constructive possession of controlled substances: A North Dakota look at a nationwide problem,* 68 ND L R 981, 982 (1992). However, common sense and the needs of law enforcement have dictated a broader interpretation of the concept than simply actual physical possession. Hence, the majority

opinion provides, and I agree, that direct proof of actual, physical possession at the time of arrest is not necessary for a conviction under MCL 333.7401; MSA 14.15(7401). *Ante* at 271. To require such proof would render it difficult to enforce Michigan's drug possession statutes. It is not infrequent that at the time of arrest a drug supplier or user is not in actual physical possession of drugs.

The expansion in the application of possession statutes has generally been analyzed under the rubric of "constructive possession." For example, in *People v Mumford,* 60 Mich App 279; 230 NW2d 395 (1975), the police entered the defendant's apartment pursuant to a search warrant and found the defendant standing near a coffee table in the living room brandishing a gun. On the coffee table was a strainer, tinfoil, and 7.8 grams of heroin. The defendant was the sole occupant of the apartment, and his wallet and mail addressed to him were found in the bedroom. The Court of Appeals concluded that the defendant could be said to have constructively possessed the heroin even though he did not actually, physically possess it at the time of his arrest:

> The circumstantial evidence bearing on possession in this case consists of defendant's exclusive presence in the apartment under circumstances indicating that he was an inhabitant, not a mere visitor. Additionally, defendant was near the coffee table on which, in plain view, were what appeared to be narcotics and narcotics paraphernalia. Finally, the jury could reasonably infer from the fact that defendant brandished a gun, that he was exercising control over the heroin with knowledge of its character. [*Id.* at 283.]

"Constructive possession" is a doctrine used to

broaden the application of possession-type crimes
to include situations in which actual physical con-
trol cannot be directly proved. LaFave & Scott,
Substantive Criminal Law (Student ed), § 3.2(3), p
286. The purpose of the constructive possession
doctrine is to expand the scope of possession stat-
utes to encompass those cases in which actual
possession at the time of arrest cannot be shown,
but "where the inference that there has been
possession at one time is exceedingly strong." *First
Report of the National Commission of Marijuana
and Drug Abuse,* Appendix, p 139 (1972). Hence,
"constructive possession" refers to prior actual
physical possession that can be inferred from the
circumstances surrounding an arrest.

The doctrine of constructive possession has also
been used to reach drug kingpins and others who
utilize representatives to actually handle con-
trolled substances. As pointed out in *United States
v Manzella,* 791 F2d 1263, 1266 (CA 7, 1986) "[i]t
would be odd if a dealer could not be guilty of
possession, merely because he had the resources to
hire a flunky to have custody of drugs." In *People
v Davis,* 109 Mich App 521; 311 NW2d 411 (1981),
an agent of the defendant agreed to pick up an
illegal substance, pay for it, and deliver it to the
defendant. The defendant's agent was appre-
hended by police officers after he obtained the
substance, but before he was able to deliver it to
the defendant. The Court of Appeals held that the
defendant had constructive possession of the con-
trolled substance because, even though he never
had actual possession of the illegal substance,
another person purchased and possessed the sub-
stance as his agent. *Id.* at 527.

In agency law, the principal and his agent share
a legal identity; it is a fundamental rule that the
principal is bound, and liable for, the acts of his

agent done with the actual or apparent authority of the principal. See, e.g., *People v Aaron,* 409 Mich 672, 731; 299 NW2d 304 (1980); *People v Lawton,* 196 Mich App 341, 352; 492 NW2d 810 (1992). It follows that principals in the drug trade are liable for the actions of their agents, and that a drug boss can be said to possess drugs found in the hands of his minions.

Generally, in most states, including Michigan, a person has constructive possession of narcotics that are under his "dominion and control." See, e.g., *People v Wolfe,* 440 Mich 508; 489 NW2d 748 (1992); *People v Germaine,* 234 Mich 623; 208 NW2d 705 (1926). This test has been criticized for failing to provide any real guidance in determining whether a person possessed drugs. Two commentators have stated that "defining possession in the traditional terms of dominion or control is simply not informative in any functional manner. The terms 'dominion' and 'control' are nothing more than labels used by courts to characterize given sets of facts." Whitebread & Stevens, *Constructive possession in narcotics cases: To have and have not,* 58 Va L R 751, 759-760 (1972). Circuit Judge Tamm of the United States Court of Appeals for the District of Columbia Circuit stated in a concurrence:

> The rhetorical legerdemain compounded in this area of the law invokes abstractions which appear more designed to achieve a particular result in an individual case than to stabilize and formalize a workable index of objective standards. The more cases one reads on constructive possession the deeper is he plunged into a thicket of subjectivity. [*United States v Holland,* 144 US App DC 225, 227, n 4; 445 F2d 701 (1971).]

Hence, in deciding whether defendant possessed

controlled substances in violation of MCL 333.7401; MSA 14.15(7401), we must be careful to look beyond labels and buzzwords. As I believe is demonstrated by the majority opinion, an analysis of possession measured by "dominion" and "control" results in a vague and overinclusive test of possession. The basic question in possession cases must be whether the defendant or his agent had actual physical possession of controlled substances at the time of arrest, i.e., had "possession," or whether it can be inferred from the evidence that at some earlier time the defendant or his agent ever actually physically possessed the cocaine at issue, i.e., had "constructive possession."[1]

### III

The majority concludes that there was in fact sufficient evidence from which a rational trier of fact could conclude beyond a reasonable doubt that the defendant constructively possessed the cocaine at issue: "The evidence permits the conclusion that the defendant had paid for the drugs and that they were his—that is, that he had the intention and power . . . to exercise control over them." *Ante* at 273. In reaching this conclusion, the majority perfunctorily declares that Joel Hamp was the agent of defendant, and that therefore defendant had control of the drugs in Hamp's possession. Citing *Davis, supra,* the majority specifically argues that Michigan courts have recognized that

---

[1] The use of the term "constructive" to modify "possession" is admittedly ambiguous and is a source of the considerable confusion surrounding the doctrine of constructive possession. As stated above, I believe the use of this term in the context of possession properly means "inferable." The majority seems to interpret it to mean that there are facts or conduct which, while not ever amounting to actual physical possession, should nonetheless be concluded to be possession for the purposes of the law. For the reasons I articulate below, I find this interpretation untenable.

defendants may constructively possess substances that their agents have bought for them. *Ante* at 274. Undoubtedly this is true and if this rule had any relevance to this case it would be dispositive. However, it does not.

In its first section, the Restatement of Agency defines agency as "the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." 1 Restatement Agency, 2d, § 1, p 7. See also *Saums v Parfet,* 270 Mich 165; 258 NW 235 (1935). An "agent" is a person having express or implied authority to represent or act on behalf of another person who is called his principal. *Burton v Burton,* 332 Mich 326; 51 NW2d 297 (1952); *Lincoln v Fairfield-Nobel Co,* 76 Mich App 514; 257 NW2d 148 (1977).

There was no evidence produced at trial from which a reasonable jury could conclude beyond a reasonable doubt that Hamp acted for or represented defendant by the defendant's authority and control. The majority points to the facts that defendant arranged with Hamp and others to purchase a kilogram of cocaine, instructed Hamp when to come to his house with the delivery, and, after his arrest, instructed his wife to "direct" Joel not to come. *Ante* at 273. This presentation of the evidence is incomplete and also fails to show the requisite authority or control necessary for an agency relationship.

The uncontroverted evidence presented by the prosecutor[2] was that defendant arranged for the cocaine with a person named Chris during a golf game approximately two weeks before defendant's

---

[2] It is noteworthy that all evidence presented at trial was that of the prosecutor. Defendant did not present a case and in fact also waived his opening statement.

arrest. During this meeting, defendant told Chris that he was "ready," which indicated to Chris that defendant needed more cocaine. This was the fourth time that Chris had supplied defendant with cocaine. Subsequently, either Hamp or a person known as Todd[3] came to defendant's house and defendant paid $40,000 cash for a kilogram of cocaine. This evidence can only suggest that Hamp, if it was him at all, was acting as an agent of the person named Chris. Only after the meeting with Chris did his apparent agent engage the defendant. It is interesting that Chris, not defendant, here appears to be the sort of "kingpin," i.e., one who controls the disposition of cocaine but never himself possesses it, that the doctrine of constructive possession was intended to reach.

The testimony at trial further showed that on August 30, Hamp called defendant and asked him to meet him somewhere to execute a delivery because everything was "together." Defendant told Hamp to instead stop by his house at approximately 7:00 P.M. Later, as defendant was being led away from his home by police, he told his wife to call "Joel" and tell him not to come to look at his motorcycle. The majority apparently believes that this ability to schedule and cancel meetings demonstrates sufficient control by defendant to show he had an agency relationship with Joel Hamp.

The test of whether an agency has been created is whether the principal has a right to control the actions of the agent. *Meretta v Peach*, 195 Mich App 695, 697; 491 NW2d 278 (1992). However, any amount of control is not sufficient. A threshold of control must obtain in order to establish an

[3] There was a conflict in the testimony of two Livonia police officers. One stated that defendant told him that a person named "Todd" picked up the $40,000 while the other stated that it was Hamp who picked up the money.

agency relationship. *Little v Howard Johnson Co,*
183 Mich App 675, 680; 455 NW2d 390 (1990). The
ability to schedule an appointment, in which one
person informs another when he is or is not avail-
able, or to cancel an appointment does not involve
the level of control necessary. If this were the
case, an agency relationship would be established
when a person orders a pizza or cancels delivery of
laundry.

It is noteworthy that in *Manzella, supra,* the
case so heavily depended on by the majority,
Judge Posner concluded that defendant did not
constructively possess narcotics.[4] This is notewor-
thy because defendant exercised a level of control
similar to the defendant in this case. In *Manzella,*
the defendant was charged with possession of co-
caine with intent to distribute. The defendant
served as a broker for various suppliers and would
match prospective buyers with these suppliers.
Judge Posner found this ability to schedule meet-
ings insufficient for a finding of constructive pos-
session unless the defendant could assure delivery.
791 F2d 1267. There was no evidence presented at
trial that the defendant in *Manzella* or the defen-
dant in this case could assure the delivery of any
cocaine. In fact, defendant depended on Chris and
his agents for his supply of cocaine.

The majority also points to *Davis,* a Michigan
case in which the Court of Appeals properly found
an agency relationship. In that case, the defendant
gave a prescription to a co-worker who agreed, at
the defendant's request, to pick up the prescrip-
tion, pay for it, and deliver it to the defendant,
whereupon the defendant would reimburse the co-

---

[4] It is unclear why Judge Posner's discussion in this case is the
"foremost discussion of what is necessary to have dominion or control
over drugs . . . ." *Ante* at 271. However, given the findings of Judge
Posner, I happily agree with the majority on this point.

worker for the purchase price. 109 Mich App 524. This case exhibits the classic attributes of an agency relationship. While there was evidence of authority to represent and consent and the ability to control the actions of an agent in *Davis,* no such evidence was presented in the case before us.

IV

In addition to its declaration of agency, the majority highlights two facts as independently sufficient to conclude that defendant constructively possessed the drugs at issue: (1) the fact that the drugs "merely awaited delivery," and (2) the fact that defendant had paid for the drugs. To my mind, these factors in combination are simply insufficient to support a finding of constructive possession, and are clearly insufficient independently.

In support of its conclusion, the majority does not turn to precedent of this state, but instead looks to federal authority. The majority argues that *United States v Harold,* 531 F2d 704 (CA 5, 1976), stands for the proposition that drugs that "merely await delivery" are in the constructive possession of the intended recipient. I disagree. In *Harold,* the defendant waited in a car while his wife went into an airport and picked up a package addressed to the defendant. After she had picked up the package, but before she returned to the car, the defendant and his wife were arrested. The finding of constructive possession was based on the agency theory discussed above. In fact, the United States Court of Appeals for the Fifth Circuit specifically pointed to the agency relationship between the defendant and his wife in ascribing constructive possession to the defendant:

The fact that the package containing the heroin

was addressed to Tom Barber, and that his wife picked it up *apparently as his agent* while he waited outside in his car, is enough to indicate sufficient dominion and control by Tom Barber to support the finding of constructive possession. [*Id.* at 705. Emphasis added.]

The court made no mention of the fact that the defendant "merely awaited delivery" of the drugs in finding constructive possession. A key to its conclusion appears to have been the agency relationship between the defendant and his wife. The fact that the drugs were addressed to the defendant simply corroborates the premise that his wife was acting as his agent.

The majority also contends that *United States v Russo,* 796 F2d 1443 (CA 11, 1986), stands for the proposition that payment for drugs may constitute constructive possession. Again, I disagree. The majority states:

In addition, the evidence indicates that the defendant had already paid for the cocaine. In some circumstances, courts have held that evidence that a defendant had already paid for cocaine can be sufficient to support a finding of constructive possession. In *United States v Russo,* the court explained that "[w]hile the evidence might have been clearer on this point, it does tend to show that Sanchez and Granados had a financial interest in and at least part ownership of the drugs *until they were distributed, sold, and Sanchez and Granados were paid.*" [*Ante* at 275. Emphasis added; citation omitted.]

The majority neglects to state the active role the defendant played in the distribution and sale of these drugs. Defendant Sanchez, in partnership with Granados, was the main supplier of drugs to the Bedami organization. Sanchez participated in

the planning of several drug importation schemes. He provided the drugs for these ventures, and at least once unloaded the drugs himself at a "stash" house. Moreover, he inspected the drugs himself to make sure that they were safely delivered. *Russo,* 796 F2d 1460-1461. Obviously, a finding of constructive possession was based on much more than the defendant's financial interest in the drugs.

The majority opinion rests on a precarious legal foundation. It is my belief that this is so because it has expanded the doctrine of constructive possession beyond its outer limits. In delimiting what I believe to be the proper parameters of constructive possession, I turn to the authority of this state.

v

Except for several prohibition cases, this Court has only addressed the concept of constructive possession of controlled substances in *People v Wolfe, supra.* In that case, an undercover officer purchased some crack cocaine at a Saginaw apartment with marked bills. Shortly thereafter, the police raided the apartment and found six individuals, a loaded shotgun, and an unspecified number of packets of crack cocaine. In the defendant's possession, they found the marked bills, a beeper, and a key to the back door of the apartment. We described the doctrine of possession as follows:

A person need not have actual physical possession of a controlled substance to be guilty of possessing it. Possession may be either actual or constructive. Likewise, possession may be found even when the defendant is not the owner of recovered narcotics. . . .

In this case, there was no direct evidence that

defendant Wolfe actually possessed the cocaine.
Rather, the evidence at trial showed that he con-
structively possessed the cocaine, i.e., that "he had
the right to exercise control of the cocaine and
knew that it was present." [*Id.* at 519-520. Cita-
tions omitted.]

We went on in *Wolfe* to state that constructive
possession exists when the totality of the circum-
stances indicates a sufficient nexus between the
defendant and the contraband. *Id.* at 522.

The case at bar can be readily distinguished
from *Wolfe.* In *Wolfe,* the defendant was present
at the house from which the drugs were being
sold, he possessed a key to the house, and he was
evidently in control of the premises. Further, there
was substantial evidence that he was working with
others in a drug-selling operation. From those
facts, the jury properly inferred that the defendant
at some time actually had possessed the cocaine.
The defendant in this case conspired to possess
drugs, with the intent to deliver them. He also
made diligent efforts to possess the cocaine—he
paid for the drugs and he came within an hour of
receiving them. But he never did. The drugs ar-
rived too late. The defendant had been arrested
and removed by the police before the drugs were
delivered. Further, the drugs were not delivered to
an agent of the defendant.

In reviewing the relevant case law of this state,
it is apparent that constructive possession of con-
trolled substances has always meant, at a mini-
mum, that there was some evidence supporting an
inference that at some time before arrest the
defendant or his agent actually physically pos-
sessed the controlled substance at issue. I can find
no case of constructive possession from this state

that provides otherwise.[5] Moreover, I believe this to be the better rule. As stated by the Minnesota Supreme Court, constructive possession only broadens the application of possession to those cases in which "the state cannot prove actual or physical possession at the time of arrest but where the inference is strong that the defendant at one time physically possessed the substance and did not abandon his possessory interest in the substance but rather continued to exercise dominion

[5] In *People v Harper,* 365 Mich 494; 113 NW2d 808 (1962), marijuana was found in the trunk of the defendant's automobile; in *People v Vander Heide,* 211 Mich 1; 178 NW 78 (1920), the defendant had baggage checks in his possession that corresponded to the trunks where liquor was stored; in *People v Williams,* 188 Mich App 54; 469 NW2d 4 (1991), the defendant was discovered by police officers in an abandoned home attempting to destroy packets of cocaine because of the presence of the officers; in *People v Downey,* 183 Mich App 405; 454 NW2d 235 (1990), drugs were found in the closet of the defendant's home; the defendant also stated that he owned the drugs; in *People v Richardson,* 139 Mich App 622; 362 NW2d 853 (1984), cocaine was found in a drawer of a water bed located in one of the bedrooms of the apartment. Also found in the drawer were several receipts and other personal papers with the defendant's name on them; in *People v McManus,* 121 Mich App 380; 328 NW2d 636 (1982), drugs were found in the defendant's desk in the room in which he kept all his personal and business records; in *People v Sammons,* 191 Mich App 351; 478 NW2d 901 (1981), the defendant provided a police officer with a sample of cocaine, participated in discussions regarding future sales, expressed interest in the denomination of the bills used to purchase the drugs, and told the police officer, "we" do not like to keep the drugs and money in the room at the same time; in *People v Delongchamps,* 103 Mich App 151; 302 NW2d 626 (1981), a forty-three pound bale of marijuana was found in the trunk of the defendant's rented automobile, which was rented with the defendant's credit card; while the ignition key was found in the possession of a codefendant, the trunk key was found in the possession of the defendant; in *People v Maliskey,* 77 Mich App 444; 258 NW2d 512 (1977), at the time of his arrest, the defendant appeared to be under the influence of narcotics; moreover, the defendant had needle marks on his arm, and narcotics and narcotics paraphernalia were found in the building in which the defendant was arrested; and in *People v Iaconis,* 29 Mich App 443; 185 NW2d 609 (1971), the defendants arrived at a home frequently for short periods of time under the influence of heroin; moreover, on the night of a police raid, the defendants were found in proximity to heroin and narcotics paraphernalia, and one of the defendants had blood marks on his shirt and a raised black and blue mark and two red dots on his arm. See also my discussions of *People v Wolfe, People v Davis,* and *People v Mumford,* in the text of this opinion.

and control over it up to the time of the arrest."
*State v Florine,* 226 NW2d 609, 610-611 (Minn,
1975).

To argue that the defendant in this case pos-
sessed the subject drugs is to expand the meaning
of the term "possession" beyond its ordinary
meaning in contravention of prior precedent of
this Court. *People v Harper,* 365 Mich 494, 506-
507; 113 NW2d 808 (1962); see also *Mumford,
supra* at 282-283. If a person makes a mail order
purchase with his credit card and then awaits
delivery, few would argue that he "possesses" the
object for which he has paid until he or perhaps
another member of the household (i.e., his agent)
has received delivery. I have no doubt that the
defendant tried mightily to obtain possession of
cocaine, but he failed. And while he may be culpa-
ble for an inchoate crime, i.e., attempted posses-
sion, he cannot be said to be guilty of the substan-
tive offense of possession.

The Legislature created the separate category of
inchoate "attempt" crimes specifically for cases
such as this. It is the nature of "attempts" that
the attempted crime is not completed. *People v
Robinson,* 23 Mich App 672, 676; 179 NW2d 239
(1970). An "attempt" has been defined as an overt
act done with the intent to commit the crime, and
which, except for the interference of some cause
preventing the carrying out of the intent, would
have resulted in the commission of the crime.
*People v Davenport,* 165 Mich App 256, 263; 418
NW2d 450 (1987). The defendant had the intent to
commit the crime of possession of drugs and per-
formed an overt act in furtherance of this intent
when he paid for them. But for the interference of
the police, who arrested the defendant and took
him into custody, the defendant's intent would
have been fulfilled, and he would have come into

possession of the drugs. The defendant's arrest rendered the defendant's criminal act incomplete, and he should only be prosecuted as the Legislature has deemed appropriate. The majority opinion renders indistinguishable the crimes of possession and attempted possession.

Finally, and perhaps most importantly, a common-sense application of the rule established by the majority presents disturbing results. The majority suggests that a person can be said to possess controlled substances if he has paid for their purchase or if he merely awaits delivery. Even if these elements are required in conjunction, this new rule of constructive possession is highly troublesome. For example, unscrupulous law enforcement officers could offer narcotics at a bargain price. As soon as a person made payment, the police could, pursuant to the majority opinion, establish that the person constructively possessed the drugs and merely awaited delivery. The police need not actually have drugs to deliver, nor must the defendant actually take receipt of them. In addition to presenting serious questions of entrapment, this formulation of constructive possession extends too far the limits of criminal culpability.

VI

The majority has misconstrued the parameters and purpose of the doctrine of constructive possession. Because the facts proved at trial are insufficient to support defendant's possession conviction, I respectfully dissent.

LEVIN and CAVANAGH, JJ., concurred with BRICKLEY, C.J.