# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

WALTER WESLEY ANSCHUTZ, JR.,

Defendant-Appellant.

UNPUBLISHED
December 16, 2014

No. 317905
Midland Circuit Court
LC No. 12-005161-FC

Before: M. J. KELLY, P.J., and CAVANAGH and METER, JJ.

PER CURIAM.

Defendant Walter Wesley Anschutz, Jr., appeals by right his jury convictions of first-degree criminal sexual conduct (CSC I), MCL 750.520b(1)(b), and second-degree criminal sexual conduct (CSC II), MCL 750.520c(1)(b). The trial court sentenced Anschutz to serve concurrent terms of 96 months to 25 years in prison for the CSC I conviction and 38 months to 15 years for the CSC II conviction. Because we conclude there were no errors warranting relief, we affirm.

## I. BASIC FACTS

The complainant, Anschutz' daughter, who was sixteen years old at the time of trial, testified that her father touched her inappropriately on three separate occasions between the fall of 2011 and winter of 2012. The first incident occurred when she was in her bedroom at night. He walked in and touched her in the area of her vagina over her pajamas. About six months later, he touched the inside of her vagina with his finger "for a few seconds." The third incident occurred when her father walked into her bedroom and touched her breast over her clothing. The complainant told a friend and a school counselor, which ultimately led to an investigation and the charges at issue.

## II. SUFFICIENCY OF THE EVIDENCE

Anschutz first argues the evidence was insufficient to support his convictions because the complainant was not credible and the only other evidence admitted at trial was his statement, which was inadmissible under the corpus delicti rule. This Court reviews a challenge to the sufficiency of the evidence by reviewing "the record evidence de novo in the light most favorable to the prosecution to determine whether a rational trier of fact could have found that

the essential elements of the crime were proved beyond a reasonable doubt." *People v Roper*, 286 Mich App 77, 83; 777 NW2d 483 (2009).

Anshutz' argues that his daughter's trial testimony had so many internal inconsistencies and her prior statements were so inconsistent that the jury should have disregarded them. However, Anschutz' citations refer to consistent testimony or inconsistencies that are immaterial. The prior inconsistent statements involve testimony where the complainant claimed during her initial forensic interview that Anschutz had not touched her inappropriately and stated during a subsequent forensic interview that he had inappropriately touched her regularly for a year. She acknowledged at trial that she was not honest during the first forensic interview; she stated that she lied because she did not want her father to be taken away from her and also because he had promised not to touch her again. After the interview, he broke his promise, so she then stated in her second forensic interview that the abuse had occurred more often than it had because she wanted to make sure he would be removed from her family's home. Although she admitted that she had not been truthful in the prior interviews, it was not unreasonable for the jury to find her credible:

> "[An appellate court] must remember that the jury is the sole judge of the facts. It is the function of the jury alone to listen to testimony, weigh the evidence and decide the questions of fact. . . . Juries, not appellate courts, see and hear witnesses and are in a much better position to decide the weight and credibility to be given to their testimony." [*People v Wolfe*, 440 Mich 508, 514-515; 489 NW2d 748 (1992), quoting *People v Palmer*, 392 Mich 370, 375-376; 220 NW2d 393 (1974).]

A rational trier of fact could believe the complainant's explanations and her testimony about the events at issue. And viewing the testimony in the light most favorable to the prosecution, her testimony was sufficient to establish the elements for both convictions. *Roper*, 286 Mich App at 83.

Anschutz also argues that, under the corpus delicti rule, the prosecution had to prove the elements of the offense on the basis of the complainant's testimony before introducing his statements to officers. The purpose of the corpus delicti rule is to prevent a defendant's confession from being used to convict him or her of a crime that did not actually occur. *People v Konrad*, 449 Mich 263, 269; 536 NW2d 517 (1995). Under the rule, a prosecutor may not admit a defendant's confession "unless there is direct or circumstantial evidence independent of the confession establishing (1) the occurrence of the specific injury . . . and (2) some criminal agency as the source of the injury." *Id.* at 269-270. Here, there was adequate independent evidence to establish the occurrence of the criminal sexual conduct and the criminal agency— namely, Anschutz' daughter's testimony. Therefore, the trial court did not violate the corpus delicti rule by allowing the prosecutor to show the jury the videotape of Anschutz' interview or by admitting his written statement confessing that he had touched his daughter's "privates."

### III.  DEFECTIVE NOTICE; INEFFECTIVE ASSISTANCE

Anschutz next argues that he was prejudiced by a lack of specificity of the dates for the offenses given in the information.  According to him, the range of dates given was so long that he was effectively denied notice and the ability to present a defense.  He similarly argues that his trial lawyer's failure to object to the information or move to separate the charges amounted to ineffective assistance of counsel.

The prosecution gave notice in the original information that the charged offenses, one count of CSC II and one count of criminal sexual conduct in the third degree, occurred between January 1, 2010 and May 31, 2012.  In the amended information, the prosecution charged Anschutz with two additional counts of CSC I, and provided that the offenses were committed in "1996 & 2010-2012."  Anschutz maintains he was denied his constitutional right to present a defense—such as alibi—and denied the ability to present "details" to counter the complainant's version of events given the length of time alleged in the information.

An Information must include "(a) [t]he nature of the offense stated in language which will fairly apprise the accused and the court of the offense charged;" and "(b) [t]he time of the offense as near as may be.  No variance as to time shall be fatal unless time is of the essence of the offense."  MCL 767.45(1).  "Time is not of the essence, nor is it a material element, in criminal sexual conduct cases involving a child victim."  *People v Dobek*, 274 Mich App 58, 83; 732 NW2d 546 (2007).  In addition, Anschutz' desire to provide an alibi defense does not "make time of the essence."  *Id.*  The information met the minimum requirements under the statute and the length of time at issue did not prejudice Anschutz.

Anshutz also argues that he was denied his due process right to adequate notice because he was charged with just two counts of CSC, while his daughter testified that he engaged in three instances.  He does not explain how the number of counts denied him proper notice of the charges against him.  The amended information adequately lists each count and describes the nature of the allegations.

He also argues that he was denied his constitutional right to separate trials on the individual charges and that his lawyer's failure to move to sever the charges amounted to ineffective assistance.  According to Anschutz, joinder was not appropriate because the information did not specify that all of the charges arose out of the same transaction, and because the complainant did not claim that the charged incidents occurred on the same day.  His argument rests on an apparent misunderstanding of law, as the incidents underlying charges need not be alleged to have occurred on the same day in order to be tried together.

Joinder is appropriate if the offenses are related, meaning that they are based on "(a) the same conduct or transaction, or (b) a series of connected acts, or (c) a series of acts constituting parts of a single scheme or plan."  MCR 6.120(B)(1).  Here, the complainant testified that she was alone in her bedroom during two of the incidents when Anschutz came in and touched her inappropriately.  Each incident occurred in the family home, and she testified that her parents played loud music and drank alcohol before each time.  This testimony was sufficient to connect the acts as part of a single scheme; therefore, joinder was appropriate.  *Id.*

The joinder also did not prejudice Anschutz. Our Supreme Court has held that joinder is not a constitutional right. *People v Williams*, 483 Mich 226, 241; 769 NW2d 605 (2009). Rather, it is "a discrete, nonconstitutional concept that should not be conflated with the constitutional double jeopardy protection." *Id.* (citation and internal quotation marks omitted). Since joinder and severance are both governed by MCR 6.120 and are related concepts, it follows that severance is not a constitutional right either. Because defendant did not have a constitutional right to severance and the charges were properly tried together, Anschutz' trial lawyer cannot be faulted for failing to move to sever. See *People v Riley*, 468 Mich 135, 142; 659 NW2d 611 (2003).

IV. SPECIFIC UNANIMITY

Anshutz further contends the trial court improperly instructed the jury on the requirement of a unanimous verdict. He notes that his daughter testified to two separate incidents of CSC II, once when he touched her clothed breast and once when he touched her genitals over her clothes. He asserts that because the jury was not required to specify which act served as the basis of its conviction, its guilty verdict may not have been unanimous. As our Supreme Court has explained, a specific unanimity instruction is not required in every case where more than one act is presented as evidence of the actus reus of a single criminal offense: "The critical inquiry is whether either party has presented evidence that *materially* distinguishes any of the alleged multiple acts from the others. In other words, where materially identical evidence is presented with respect to each act, and there is no juror confusion, a general unanimity instruction will suffice." *People v Cooks*, 446 Mich 503, 512-513; 521 NW2d 275 (1994).

As an illustration of materially distinct evidence, the Court in *Cooks* discussed *People v Yarger*, 193 Mich App 532, 534; 485 NW2d 119 (1992), in which the 15-year-old complainant testified that she had engaged in consensual fellatio with the defendant, after which the defendant vaginally penetrated her. Although the defendant was charged with a single count of third-degree criminal sexual conduct, the *Yarger* Court noted that "[t]he complainant's trial testimony, if accepted as true, would have supported two separate convictions of third-degree criminal sexual conduct, each based on a separate sexual penetration." *Id.* at 536. The Court in *Yarger* found that "because only a single count of third-degree criminal sexual conduct was submitted to the jury, error occurred when the jury was not instructed that it must unanimously agree on *which* act(s) was proven beyond a reasonable doubt" because the possibility existed that "six jurors were convinced that fellatio had occurred, but not intercourse, while the other six jurors held the opposite view." *Id.* at 537 (emphasis in original).

Unlike *Yarger*, in this case "neither party presented materially distinct proofs regarding any of the alleged acts," so there was no "factual basis for the specific unanimity instruction[.]" *Cooks*, 446 Mich at 528. The complainant testified that Anschutz touched her twice over her clothing, once on her breast and once on her vagina. While the facts of these incidents are not identical, they may reasonably be described as *materially* identical because both incidents involved an act of intimate touching over her clothing. In addition, the circumstances surrounding the incidents were similar, as she testified that both acts occurred in her bedroom after her father had been drinking. The trial court did not err by failing to give a specific unanimity instruction because the facts of the incidents were materially identical, so a general unanimity instruction was sufficient.

# V. RECANTED TESTIMONY

Anschutz argues that the trial court erred in denying his motion for a new trial based on recanted testimony and that he was denied his right to fully question his daughter as to the extent of her untruthfulness at trial during his post-trial motion hearing. This Court reviews a trial court's decision whether to grant a new trial for an abuse of discretion. *People v Miller*, 482 Mich 540, 544; 759 NW2d 850 (2008). A trial court abuses its discretion when it selects an outcome falling outside the principled range of outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003).

Following trial, the court held an evidentiary hearing on the basis of a letter Anschutz wrote to the court claiming that his daughter had recanted her trial testimony. At the hearing, Anschutz' daughter testified that during a meeting before trial with the prosecutor, the prosecutor played the videotape of her forensic interview, paused it at the point in the interview where she had claimed that her father had touched her beneath her clothes, and gave her a "really . . . weird look" and told her that if she did not repeat those allegations in her trial testimony she would "be getting into trouble." She expressed that this caused her some consternation because her father never touched her beneath her clothes. She claimed, however, that she did not share this information with the prosecutor during the meeting.

Although we agree that Anschutz' daughter seems to have recanted at least a portion of her trial testimony, we nevertheless conclude that the trial court did not abuse its discretion when it denied Anschutz' motion for a new trial. In order to warrant a new trial premised on newly discovered evidence, the defendant must show: "(1) the evidence itself, not merely its materiality, is newly discovered, (2) the evidence is not merely cumulative, (3) the evidence is such as to render a different result probable on retrial, and (4) the defendant could not with reasonable diligence have produced it at trial." *People v Canter*, 197 Mich App 550, 559; 496 NW2d 336 (1992). "[W]here newly discovered evidence takes the form of recantation testimony, it is traditionally regarded as suspect and untrustworthy." *Id.*

Anschutz has not established that his daughter's testimony is newly discovered evidence that entitles him to a new trial under the test set forth in *Canter*. At trial, Anschutz presented evidence that his daughter had recanted her allegations before trial. His daughter's half-sister testified that the complainant had confided to her that "she felt bad" about Anschutz' legal situation because "he didn't do it." Anschutz' lawyer also questioned the complainant about the inconsistency between her statement at the forensic interview that her father had touched her inappropriately "every other day for a year" when she was in eighth grade, and her trial testimony that the incidents had occurred just three times. The prosecutor also elicited testimony from the complainant that, after she told a friend about Anschutz' conduct, she initially "told everybody [else] that nothing ever happened." Although the complainant did not claim at trial that she had fabricated the allegations underlying the CSC I charge as she did during the hearing, Anschutz was nevertheless able to demonstrate that her story had changed several times in the various settings in which she had told it. Furthermore, by introducing her half-sister's testimony, Anschutz was able to argue that at one time the complainant had recanted her allegations. Thus, the complainant's testimony was not newly discovered evidence. Further, given the unreliable nature of recantation evidence, we conclude the trial court did not abuse its discretion by denying Anschutz' motion for new trial. *Babcock*, 469 Mich at 269.

## VI. PROSECUTORIAL ERROR

Anschutz argues that the prosecutor erred by eliciting improper opinion testimony from the investigating officer on the following issues: his conclusions regarding Anschutz' body language and certain statements he made during his interview; his description of the format of forensic interviews because it implied that "truth is obtained" by using that protocol; and his testimony regarding the reason for and frequency of children recanting allegations of sexual abuse. Anschutz also argues that it was improper for the prosecutor to refer to this testimony in her closing argument.

A lay witness may offer opinion testimony under MRE 701 if his or her opinions are "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." The officer's testimony about his general experiences with other suspects in similar circumstances was admissible under the court rule. Similarly, his general observations as to the behavior of child victims of sexual abuse and the format of a forensic interview were permissible under the court rule. It was not improper for the prosecutor to elicit this testimony, or for the trial court to admit it.

Anschutz' claim that the prosecutor erred when she cited statements made by the officer during her closing argument is not persuasive. "A prosecutor's comments are to be evaluated in light of defense arguments and the relationship the comments bear to the evidence admitted at trial." *Dobek*, 274 Mich App at 64. Because the cited comments were based on evidence properly introduced at trial, they were not improper, and Anschutz is not entitled to relief. *Id.* at 66 (noting that a prosecutor is free to argue the evidence and all the reasonable inferences arising from it).

There were no errors warranting relief.

Affirmed.

/s/ Michael J. Kelly
/s/ Mark J. Cavanagh
/s/ Patrick M. Meter